[No. A101737. First Dist., Div. Four. Apr. 11, 2003.]

ORRICK HERRINGTON & SUTCLIFFE LLP, et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
MICHAEL A. MALCOLM, Real Party in Interest.

## COUNSEL

Keker & Van Nest, Robert A. Van Nest, Christa M. Anderson and Steven A. Hirsch for Petitioners.

No appearance for Respondent.

Holme Roberts & Owen, James Wesley Kinnear and Adria Y. LaRose for Real Party in Interest.

## OPINION

**KAY, P. J.**—The law in California is well established that when legal malpractice involves negligence in the prosecution or defense of a legal claim, the case-within-a-case methodology must be used. More specifically, for purposes of this case, which involved settlement of litigation, the plaintiff must prove his opponent in the underlying litigation would have settled for less, or that following a trial, plaintiff would have obtained a judgment more favorable than the settlement.

Real party in interest Michael A. Malcolm sued petitioners for malpractice, alleging they omitted critical terms from a marital settlement agreement. In response to a summary judgment motion, Malcolm did not produce evidence showing that his former wife would have settled for less, or that he would have obtained a judgment more favorable than the settlement. Instead he claimed as damages the legal fees he spent in an unsuccessful attempt to overturn the settlement. Contrary to the conclusion reached by the trial court, those fees do not represent possible tort damages. As there is no evidence of any other recognized tort damages, this case is simply a fee dispute. The action should go forward, but only on the contract causes of action alleged in the complaint.

### BACKGROUND

Malcolm hired several lawyers to represent him in the dissolution of his marriage. Among the lawyers he hired were petitioners, the law firm of Orrick Herrington & Sutcliffe LLP and one of its partners, Christopher Ottenweller (collectively hereafter Orrick, unless otherwise noted).

During a mediation session on March 13 and 14, 2000, Malcolm and his former wife signed a "Property Settlement Agreement" that divided their substantial assets. According to Malcolm, however, he was advised by Ottenweller that the agreement was a "term sheet," and that it did not contain all the terms required for a final, binding agreement.

The attorneys for Malcolm's former wife took the position that the agreement was fully enforceable as written. On March 31, 2000, Malcolm moved to set aside the settlement agreement. The trial court denied the motion, finding no reasonable basis for it. On July 11, 2000, the court entered a judgment in the dissolution action that incorporated the terms of the settlement agreement. When Malcolm persisted in efforts to set aside that judgment, the court imposed monetary sanctions in the amount of.$100,000. The court also found a motion by Malcolm's new wife to intervene in the matter was frivolous and made for the purpose of bolstering Malcolm's attempt to set aside the settlement. Ultimately, Malcolm paid hundreds of thousands of dollars in attorney fees in his futile quest to overturn the settlement.[1]

Malcolm sued Orrick, the law firm of Kaufman & Young, P.C., and Robert S. Kaufman for professional negligence, breach of contract, and breach of fiduciary duty. Malcolm alleged his lawyers had failed to provide competent services, leading him to enter into a "horribly defective 'settlement' agreement." He cited the agreement's failure to include a release from his former wife, and its inclusion of provisions that could expose him to adverse tax consequences or securities law violations. He also cited his lawyers' failure to obtain his current wife's consent to the settlement.

Orrick responded with a cross-complaint, which alleged Malcolm owed over $400,000 in fees.

Orrick moved for summary judgment on all causes of action, or, in the alternative, summary adjudication on the individual causes of action. Orrick asserted Malcolm could not prove actual damages, an essential element of each of his causes of action. Orrick submitted discovery responses that showed neither Malcolm's former wife nor his current wife had filed any claims against him in connection with the settlement, that Malcolm had not been accused of any securities law violations, and that Malcolm could not identify any adverse tax consequences.

In opposition, Malcolm identified as damages the fees he had paid to Orrick, the fees he had paid to attempt to remedy Orrick's errors, and his

---

[1]Malcolm retained two new law firms for the quest. Attorney Lana Norris, who had been part of the original team of lawyers with Orrick, also continued to represent Malcolm.

payment of over $500 million to his former wife to settle claims worth approximately $30 million at the time of separation. Malcolm submitted, among other things, his legal bills and a declaration from an expert, who stated Orrick's conduct in negotiating the settlement agreement, fell below the pertinent standard of care. Malcolm also submitted a declaration by Ottenweller from the dissolution action, dated October 6, 2000, in which Ottenweller stated it was his understanding that a final stipulated judgment would contain additional language and terms to "flesh out" the property settlement agreement, including a mutual release between the parties. In his separate statement of facts, Malcolm noted that although it was undisputed that his wives (former and current) had not filed any claims against him and that there were no securities or tax claims against him, he was exposed to future claims.

The trial court denied Orrick's motion for summary judgment, finding there were triable issues of fact regarding "damages created by evidence of attorneys' fees expended in connection with attempts to correct errors committed in the negotiation, preparation and execution of a settlement agreement enforceable under [Code of Civil Procedure] section 664.6, entered on or about March 14, 2000, including, without limitation, motions to vacate the judgment and subsequent appeals."

Orrick timely filed a petition for peremptory writ of mandate and/or prohibition or other appropriate relief in this court. We asked for opposition from Malcolm and notified him that we were considering the issuance of a peremptory writ in the first instance. (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180 [203 Cal.Rptr. 626, 681 P.2d 893].) Malcolm has filed his opposition, and after reviewing it, we conclude the issuance of a peremptory writ in the first instance is appropriate, as the applicable principles of law are well established and the relevant facts are undisputed. (See *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1259-1260 [82 Cal.Rptr.2d 85, 970 P.2d 872].)

## DISCUSSION

### A. Standard of Review

■ "The grant and denial of summary judgment or summary adjudication motions are subject to de novo review." (*Nakamura v. Superior Court* (2000) 83 Cal.App.4th 825, 832 [100 Cal.Rptr.2d 97].) This court applies the same analysis as the trial court. We identify the issues framed by the pleadings, determine whether the moving party has negated the nonmoving party's claims, and determine whether the opposition has demonstrated the

existence of a triable issue of material fact. (*Yanowitz v. L'Oreal USA, Inc.* (2003) 106 Cal.App.4th 1036, 1050 [131 Cal.Rptr.2d 575].) Summary judgment is appropriate if all the papers submitted show there is no triable issue of fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

B. *Legal Malpractice Damages in Litigation*

■ The only issue raised by this petition is whether Malcolm submitted any evidence of cognizable damages.

■ A plaintiff alleging legal malpractice in the prosecution or defense of a legal claim must prove that, but for the negligence of the attorney, a better result could have been obtained in the underlying action. (*California State Auto. Assn. Inter-Ins. Bureau v. Parichan, Renberg, Crossman & Harvey* (2000) 84 Cal.App.4th 702, 710 [101 Cal.Rptr.2d 72] (*Parichan*).) The purpose of this methodology is to avoid damages based on pure speculation and conjecture. (*Ibid.*) "Although no bright line rule tells us when this methodology must be used, *it is quite clear that, when the malpractice involves negligence in the prosecution or defense of a legal claim, the case-within-a-case method is appropriately employed.*" (*Ibid.*, italics added.)

In *Marshak v. Ballesteros* (1999) 72 Cal.App.4th 1514 [86 Cal.Rptr.2d 1] (*Marshak*), the case-within-in-a-case method was applied to a legal malpractice claim arising from the settlement of a marital dissolution action. As in the instant case, the plaintiff in *Marshak* unsuccessfully attempted to set aside the settlement. He then sued his attorney, alleging she negligently failed to object to the valuation of certain assets, resulting in a loss of $337,000. In response to a summary judgment motion, the plaintiff proffered evidence as to the value of the assets, but not as to the value of his case. Both the trial and appellate courts concluded he had failed to offer evidence of damages: "In order to prevail in his legal malpractice action, plaintiff must prove that the dissolution action would have resulted in a better outcome had defendant recommended that he reject the settlement offer. Plaintiff must prove what that better outcome would have been." (*Id.* at p. 1518.) Simply showing the attorney erred is not enough. The plaintiff "must *also* prove that his ex-wife would have settled for less than she did, or that, following trial, a judge would have entered judgment more favorable than that to which he stipulated." (*Id.* at p. 1519; see also *Thompson v. Halvonik* (1995) 36 Cal.App.4th 657, 662-664 [43 Cal.Rptr.2d 142] [evidence fails to show that but for that attorney's delay in handling action, case would have settled sooner or on more favorable terms].)

Malcolm's showing in opposition to Orrick's summary judgment motion suffers from the same infirmity. He produced no evidence showing his ex-wife would have settled for less than she did, or that following a trial, he would have obtained a judgment more favorable than the settlement.[2] Malcolm also proffered no evidence showing his ex-wife would have agreed to a settlement that included the terms he claims were omitted. Instead he showed only that Orrick might have erred, exposing him to possible future claims. "The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence." (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433] (*Budd*); see also *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 754 [76 Cal.Rptr.2d 749, 958 P.2d 1062] (*Jordache*) [speculative and contingent injuries are those that do not exist, as when an attorney's error creates only a potential for harm in the future].) Summary adjudication in favor of Orrick on Malcolm's tort claims should have naturally followed.

Malcolm, however, contends *Marshak* and the case-within-a-case method do not apply here because this was a case of transactional malpractice—Orrick committed errors in drafting the settlement agreement.[3] Therefore, according to Malcolm, the money he spent attempting to "correct" the errors, along with the fees he paid to Orrick, are his damages.

Before examining the authority Malcolm has cited in support of his contention, we think it is important to note that if Malcolm were correct, the holding in *Marshak*, indeed the case-within-a-case method, would be eviscerated. First, as Orrick points out, a litigant dissatisfied with a settlement (or a judgment for that matter) need only hire new attorneys and incur additional fees challenging the settlement to generate damages. The need to show a better result in the underlying litigation evaporates. Second, the idea that the fees paid to the negligent attorney constitute tort damages, if credited, would lead to an absurd result. Again there would be no need to prove a better result in the underlying litigation, because damages would exist based on the mere acceptance of a fee for the services provided.

Malcolm relies on three cases to support his theory of recovery: *Parichan; Sindell v. Gibson, Dunn & Crutcher* (1997) 54 Cal.App.4th 1457 [63

---

[2] At the hearing on the summary judgment motion, counsel for Malcolm stated he was not arguing that Malcolm should have or would have done better at trial.

[3] Whether the case-within-a-case method should apply to attorney negligence committed while representing a client in a business transaction is an issue in an appeal currently pending before the California Supreme Court. (*Viner v. Sweet* (2001) 92 Cal.App.4th 730 [112 Cal.Rptr.2d 426], review granted Dec. 19, 2001, S101964.)

Cal.Rptr.2d 594] (*Sindell*); and *Jordache*. None of these cases involved even remotely similar circumstances.

The law firm in *Parichan* was hired by an insurer to represent its insured in a personal injury lawsuit. As the *Parichan* court noted, the law firm was wearing two hats—defending the insured, while providing something closer to business advice to the insurer. (*Parichan, supra,* 84 Cal.App.4th at p. 711.) Had the law firm committed negligence in defending the insured, the case-within-a-case method would have been employed to determine whether the negligence caused damages. (*Ibid.*) The negligence, however, involved the insurer, the client receiving business advice. The law firm failed to forward information, which would have allowed the insurer to evaluate a policy limits settlement, offer. As a result of the error, the insurer ultimately paid a settlement far in excess of policy limits in order to fend off a threatened bad faith lawsuit by its insured. (*Id.* at p. 708.) According to the *Parichan* court, under the "unique" circumstances of the case, the case-within-a-case method did not apply. (*Id.* at p. 714.) "We emphasize . . . the case-within-a-case methodology continues to apply in all legal malpractice actions involving a client's assertion that his attorney has either negligently prosecuted or defended the client's claim." (*Ibid.*)

Malcolm is on a par with the insured in *Parichan*, not the insurer. Orrick was defending Malcolm in the marital property dispute. Any advice was given in the context of litigation and presumably to achieve the best possible result in the litigation. Malcolm and Orrick were not negotiating a business transaction, in which they could simply walk away at any time and seek a better deal elsewhere. The matter was either going to settle or go to trial. Therefore, Malcolm, to show damages, would have to prove he could have achieved a better result in the litigation, but for Orrick's alleged errors or omissions.

In *Sindell*, the law firm allegedly committed an error while preparing an estate plan. As a result of the error, certain beneficiaries of the estate plan were sued. These facts presented a classic "tort of another" scenario. "A person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." (*Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645]; see *Sindell, supra,* 54 Cal.App.4th at pp. 1470-1471; see also *Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817-818 [210 Cal.Rptr. 211, 693 P.2d 796].)

*Sindell* and the instant case have one fact in common. Both involve an alleged failure to obtain the consent of a wife to property transfers. (See *Sindell, supra,* 54 Cal.App.4th at p. 1461.) Where the cases diverge is the fact that the error in *Sindell* resulted in the filing of a lawsuit by the wife, requiring the estate beneficiaries to defend their interest in the estate. (*Id.* at p. 1471.) They incurred hundreds of thousands of dollars in expense defending against the lawsuit.

If Orrick's alleged errors had required Malcolm to act to protect his interests by bringing or defending an action against a third person, he might have a tort cause of action against Orrick. The undisputed facts, however, show neither his ex-wife nor his current wife, nor the taxing authorities nor the securities regulators have made any claims against Malcolm. Nothing compelled Malcolm to spend hundreds of thousands of dollars in his futile attempt to overturn the settlement. (Cf. *Prentice v. North Amer. Title Guar. Corp., supra,* 59 Cal.2d at p. 621 [plaintiffs required to incur attorney fees to bring quiet title action as a result of escrow holder's error].)

Finally, Malcolm cites *Jordache* for the general propositions that (1) fees paid to a second attorney to correct errors committed by the first attorney represent damages, and (2) the fees he paid Orrick constitute actual damages.[4] The first proposition, as demonstrated in *Sindell,* is not in dispute. (See *Jordache, supra,* 18 Cal.4th at pp. 750-751.) It just does not apply in the instant case as discussed above. The second proposition is true only so far as Malcolm is claiming he paid more than the value of the legal services he received. (*Ibid.*) If he can prove he did not receive value for his payment, he may recover damages "to the extent" the fees exceed the value of the services received. (*Budd, supra,* 6 Cal.3d at pp. 201-202.) Thus, Malcolm's recovery is limited to the amount of fees paid.

Although neither *Jordache* nor *Budd* explicitly so states, we believe it is evident that an overpayment for services is contract damages.[5] As we have already explained, were the law to be otherwise, tort damages would exist in every instance an attorney collected a fee.

---

[4]Malcolm does not appear to be arguing *Jordache* is factually apposite to his case. The attorneys in *Jordache* allegedly failed to advise their clients about the availability of insurance coverage for a third party suit, allowing the insurer to assert a viable coverage defense. (See *Jordache, supra,* 18 Cal.4th at p. 743.) At issue in *Jordache* was the meaning of "actual injury" for purposes of the legal malpractice statute of limitations. (*Id.* at p. 742; see Code Civ. Proc., § 340.6.)

[5]In contrast, both *Budd* and *Jordache* specifically identify fees paid to a second attorney to correct the first attorney's error as "tort" damages. (*Budd, supra,* 6 Cal.3d at pp. 201-202; *Jordache, supra,* 18 Cal.4th at pp. 750-751.) "In characterizing the latter fees as a type of damage that allows a malpractice cause of action to accrue, *Budd* simply recognized the established rule that attorney fees incurred as a direct result of another's tort are recoverable

The trial court properly denied Orrick's motion for summary judgment, but for the wrong reason. Malcolm produced no evidence of cognizable tort damages. We do believe, however, that he produced sufficient evidence to proceed with his contract claims.

Malcolm claims he did not get what he paid for, Orrick claims it is owed additional sums for the services it provided. The case should proceed on that basis.

### DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order filed January 22, 2003, denying Orrick's motion for summary judgment, or, in the alternative, summary adjudication. The court shall issue a new order denying summary judgment, but granting summary adjudication in favor of Orrick on Malcolm's professional negligence and breach of fiduciary duty claims. Orrick shall recover its costs for this petition.

Reardon, J., and Rivera, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied July 30, 2003. George, C. J., Werdegar, J., and Brown, J., did not participate therein.

---

damages." (*Jordache, supra,* at p. 751, citing *Brandt v. Superior Court, supra,* 37 Cal.3d 813 and *Prentice v. North Amer. Title Guar. Corp., supra,* 59 Cal.2d 618.)