Filed 4/3/13  M.N. Mansour v. Spolin, Silverman et al. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| M.N. MANSOUR, INC., et al., | |
| Plaintiffs and Appellants, | G046654 |
| v. | (Super. Ct. No. 30-2011-00462556) |
| SPOLIN, SILVERMAN, COHEN & BOSSERMAN, LLP, et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Linda S. Marks, Judge.  Affirmed.

Law Offices of William B. Hanley and William B. Hanley; Law Offices of Laura Sullivan and Laura M. Sullivan, for Plaintiffs and Appellants.

Bingham McCutchen, Bruce A. Friedman and Robert A. Brundage, for Defendants and Respondents.

## INTRODUCTION

This appeal involves a claim of transactional malpractice against a law firm, Spolin, Silverman, Cohen and Bosserman, LLP, and two of its lawyers, Scott Spolin and Stephen Silverman (collectively, Spolin). Their former client, M.N. Mansour, Inc. (Mansour), and its principal, M.N. Mansour, allege that Spolin committed malpractice when it failed to include a provision in an asset purchase agreement requiring the buyer to continue to pay Mansour if the assets it purchased from Mansour were sold to another company.

Spolin moved for summary judgment on the malpractice claim, asserting that the buyer would not have agreed to the provision appellants now assert was negligently omitted from the purchase agreement. The court granted the motion and dismissed the action.

We affirm. Appellants did not present evidence to create a triable issue of fact as to whether they would have received a "better deal" if the omission had not occurred. Without this evidence, appellants could not establish "but for" causation, and the legal malpractice claim fails.

## FACTS

Mansour, formerly known as Applied Utility Systems, Inc. (AUS), developed a system for removing pollutants from power plants and other fossil-fuel-burning equipment. In early 2006, AUS entered into negotiations with Catalytic Solutions, Inc. (CSI), to sell its assets. CSI created a subsidiary, AUS Acquisition, Inc. (Acquisition), to purchase these assets.

In May 2006, CSI and AUS executed a letter of intent, which was expressly made nonbinding. The parties contemplated structuring the purchase and sale to include

2

an earn-out.[1]  The letter of intent also stated, "The parties shall mutually agree on the liquidated amount earn-put payments to be paid to the shareholders of AUS in the event of acquisition, change in control or sale of substantially all of the assets of CSI prior to the end of the [earn-out period]."

Spolin came on board to represent Mansour in negotiations with CSI in July 2006.  The parties entered into an asset purchase agreement on August 28, 2006.  At some point before that date, the structure of the transaction had changed.  The letter of intent contemplated that CSI would buy AUS's assets.  The asset purchase agreement, however, identified Acquisition, a CSI subsidiary, as the purchaser.  The provision regarding a liquidated earn-out amount in the event of acquisition, change in control, or sale of CSI's assets was not included in the final agreement.

The first installment of earn-out payments was due on May 1, 2010.  On October 1, 2009, AUS's assets were sold to an unrelated company.  This company refused to assume the earn-out payments to Mansour.  CSI apparently took the position that it too was exempted from any obligation to pay earn-out amounts to Mansour now that it no longer owned the AUS assets.[2]

Mansour understandably disagreed, and it sued CSI in Orange County Superior Court.  The case went to arbitration and ultimately settled in October 2010 with CSI paying Mansour over $3 million and releasing M.N. Mansour from an obligation to pay CSI $1.2 million.  The total value of the settlement to appellants was $4.275 million.

Mansour and its principal then sued Spolin for failing to secure a provision in the asset purchase agreement requiring payment to Mansour if CSI sold the acquired

---

[1]     An earn-out transaction usually involves a lump sum payment up front, with the remainder of the purchase price payable over time and dependent on the financial performance of the acquired company.  (See *Irving v. Ebix Software India Private Ltd.* (S.D.Cal. Apr. 12, 2011, Civ. No. 10-CV-762 JLS) 2011 U.S.Dist. Lexis 39467 at *2-3.)

[2]     This is not entirely certain.  During his deposition, Spolin's counsel asked M.N. Mansour whether CSI took the position in the litigation between CSI and Mansour that it did not have to pay the earn-out amounts. He replied, "Not to my knowledge."

assets before the end of the earn-out period. As damages, appellants alleged the amount Mansour would have received through the end of the earn-out period.

Spolin filed a summary judgment motion, which the court heard on March 9, 2012. Accompanying Spolin's motion was a declaration from Charles Call, CSI's chief executive officer. The court granted the motion on the ground that plaintiffs had presented no evidence to counteract Call's statement that he would not have agreed to make CSI responsible for paying Mansour's earn-out if the AUS assets were sold to some other company. Accordingly, Mansour could not show it would have obtained a "better deal" had Spolin not made the alleged mistake. Appellants therefore could not recover for transactional malpractice. The court dismissed the case, and judgment was entered for Spolin on March 12, 2012.

## DISCUSSION

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo, considering all the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action . . . .' [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

The leading case on transactional malpractice is *Viner v. Sweet* (2003) 30 Cal.4th 1232, in which our Supreme Court held that a client suing for this kind of negligence must prove "'but for'" causation, "meaning that the harm or loss would not

4

have occurred without the attorney's malpractice." (*Id.* at p. 1235.) If the client's harm or loss would have been sustained even if the attorney had not erred, then the attorney has not committed malpractice. (*Id.* at p. 1240.) Showing attorney error is not enough. The client must also show that "*but for* the alleged malpractice, it is more likely than not that the [client] would have obtained a more favorable result." (*Id.* at p. 1244.) This showing is usually referred to as the "better deal" requirement.[3]

In this case, CSI's chief executive officer, Charles Call, stated he would not have signed an agreement that included a provision requiring CSI to keep paying Mansour if CSI sold the assets to another company. This declaration presents admissible evidence that Mansour would not have done better with respect to this particular aspect of the purchase agreement. Even if Spolin had brought it up, CSI would not have agreed to it. (See *Dang v. Smith* (2011) 190 Cal.App.4th 646, 665.)

Accordingly it was appellants' responsibility to present evidence to create a triable issue of fact as to whether CSI would have agreed to such a provision or to some other provision that would have resulted in a net benefit to Mansour. (See *Orrick Herrington & Sutcliffe v. Superior Court* (2003) 107 Cal.App.4th 1052, 1058 [client failed to present evidence that ex-wife would have settled for less].) The only evidence appellants presented to counterbalance the Call declaration was the nonbinding letter of intent, one of the terms of which was a promise to mutually agree on a liquidated earn-out payment if "substantially all" of CSI's assets were sold before the earn-out period ended. As the trial court pointed out, this letter is nonbinding, and, in any event, CSI's assets were not sold. According to the complaint, the assets sold were the ones CSI's subsidiary, Acquisition, had obtained from Mansour. Even if that term of the letter of

---

3    Under some circumstances a "better deal" could be "no deal"; in other words, the parties do not reach an agreement, the status quo is preserved, and the status quo is better for the client than the actual deal would have been.

5

intent had been included in the final purchase agreement, it would not have applied to the situation about which appellants now complain.[4]

Appellants maintain the presence of the paragraph in the letter of intent is evidence that CSI would have agreed to some kind of an earn-out protection provision in the final purchase agreement if only Spolin had thought to negotiate one, even if it was not the exact one in the letter of intent. Perhaps so. But Mansour did not need just any liquidated earn-out provision. In order to prevent the specific harm it alleges, it needed one that would apply if the AUS assets were sold to a third party. The liquidated earn-out payment that appellants insist Spolin should have sought, which would have applied in this situation, is precisely the one Call unequivocally stated he would not have approved. Whether some other earn-out protection might have been obtainable is, at this point, moot. Appellants were unable to present evidence that the kind of provision they fault Spolin for not getting, the provision that would have required payment if the assets were sold, could have been negotiated.

Appellants asserted that Mansour would have walked away from the deal had it known that CSI might sell the assets before the earn-out period was over.[5] M.N. Mansour's deposition testimony, however, paints a different picture. Mansour (then AUS) lost $700,000 during the first six months of June 2006. As M.N. Mansour testified in deposition, he needed an agreement, and anything that would prevent the agreement from closing was not an option. In late July 2006, M.N. Mansour specifically told Spolin (by e-mail) that he did not want any more negotiating or introducing of new terms into

---

[4]     For this reason, the expert declaration of Linn Crader also does not assist appellants. Crader stated that it is common practice in transactions including an earn-out component to include a provision protecting the earn-out in case the purchasing company, CSI, was later acquired by another company, changed control, or sold substantially all its assets. None of those contingencies happened in this case. Crader expressed no opinion about provisions in an asset purchase agreement regarding subsequent sale of the acquired assets.

[5]     At oral argument, appellants' counsel told us that the trial court agreed with Mansour that it could have walked away from the deal. We have scoured the record for evidence of this agreement, to no avail. The trial court credited Call's declaration testimony that *CSI* would have walked away from the deal if Mansour had insisted on a liquidation clause like the one appellants now propose. But whether CSI would have walked away if the clause was included has no bearing on whether Mansour would have walked away if it was not.

6

the deal, because it was about to close. The company was losing money, and he and his wife no longer wanted to be responsible for it. If the deal with CSI did not happen, Mansour was going to be shut down. Although Mansour could have theoretically walked away from the CSI deal, by M.N. Manour's own admission, walking away would have meant corporate suicide.

A declaration that contradicts prior deposition testimony cannot create a triable issue of fact. (*Archdale v. American Internat. Specialty Lines Ins. Co.* (2007) 154 Cal.App.4th 449, 473.) From the deposition evidence Spolin presented, it is clear that "no deal" would not have been a "better deal" for Mansour. Appellants gave the trial court nothing to counteract this evidence except for M.N. Mansour's statement that he would have walked away from the deal had he been told that the purchase agreement lacked a provision regarding subsequent sale of AUS's assets, because he would have realized that CSI was operating in bad faith and had no intention of paying him in the future. Even if this were true, it would not change the fact that no deal was not a better deal. Mansour was losing over $100,000 a month in 2006 and would have gone out of business had the deal not closed. Apparently Mansour received something under the asset purchase agreement; something is better than nothing.[6]

Appellants presented no evidence to create a triable issue of fact as to either the "better deal" or the "no-deal" aspect of transactional malpractice causation. The court properly granted Spolin's summary judgment motion.

---

[6] According to appellants, they were paid $1.5 million when the deal was signed, $250,000 in December 2006, and $1.5 million after the closing of qualified financing, in addition to the $4.725 in settlement payments. Given that Mansour was going under in 2006, it is hard to see how "no deal" would have been a better deal.

## DISPOSITION

The judgment is affirmed.  Respondent is to recover its costs on appeal.


                                    BEDSWORTH, J.

WE CONCUR:



O'LEARY, P. J.



RYLAARSDAM, J.

8