Filed 10/29/13  Lu v. Trustees of Leland Stanford Jr. University CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JENNIFER LU,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>TRUSTEES OF LELAND STANFORD<br>JR. UNIVERSITY,<br><br>    Defendant and Respondent. | H037294<br>(Santa Clara County<br>Super. Ct. No. CV152301) |

In this employment case, plaintiff Jennifer Lu, proceeding in propria persona appeals a judgment entered in favor of the Trustees of Leland Stanford Jr. University (Stanford) following Stanford's successful motion for summary judgment on Lu's discrimination action.  On appeal, Lu asserts the trial court erred in granting Stanford's motion.

### STATEMENT OF THE FACTS AND CASE

Stanford hired Lu in August 2001 to work in the Office of Continuing Medical Education (OCME) at Stanford University's School of Medicine.  Lu's position at the time was "CME Services Coordinator."  In May 2005, Lu was reclassified and promoted, receiving an 8.9 percent salary increase and a new title of "RSC Program Administrator."

During the time Lu was employed at Stanford, she filed a total of six claims with the Department of Fair Employment and Housing (DFEH).  The first complaint occurred

in February 2006, in which she alleged Stanford discriminated against her because she was Asian. Lu claimed she was denied a bonus, received a dissimilar raise from another non-Asian coworker, was demoted, and was given lower job responsibilities. The DFEH issued a right-to-sue letter on February 13, 2006.

Following her complaint to the DFEH, Lu complained to Stanford that she was being treated unfairly at the OCME, and wanted to be transferred to a different position. In response to Lu's request, on March 21, 2006, Stanford transferred Lu to the Office of Educational Programs and Services, which, like her previous position with the OCME, was in Stanford's medical school. The transfer was lateral, and Lu maintained the same salary and classification as her old position.

Immediately after her transfer, Lu went on medical leave for major depressive disorder that she claims was caused by the transfer. While on leave, in April 2006, Lu filed her second complaint with the DFEH. In this complaint, Lu claimed the lateral transfer was in retaliation for her filing the February 2006 charge. The DFEH issued a right-to-sue letter on April 18, 2006.

When Lu returned to work following her medical leave, she requested a reduced work schedule of four hours per day, for three days per week between July 10, 2006 and August 7, 2006. This request was pursuant to her doctor's orders. Lu's doctor stated that Lu could be released to work full time beginning August 7, 2006.

On July 21, 2006, while working on the reduced schedule, Lu emailed her supervisor stating that she "had severe anxiety attacks since [she] started reviewing the description of [her] position," and was undergoing "enormous mental torture and emotional distress." Lu was crying openly at work and was threatening to kill herself. Lu's supervisor became concerned about Lu's emotional stability and on July 24, 2006, told Lu not to return to work until Stanford received an updated confirmation from Lu's

2

doctor that Lu was fit for duty. Lu was placed on paid administrative leave pending the evaluation.

Stanford also decided to seek a second medical opinion of Lu's fitness for duty. In October 2006, the doctor completed the evaluation and concluded that Lu did not pose a risk of harm to herself or others. In addition, Lu's doctor did not revise his original evaluation that Lu was fit to return to work. Lu returned to work full time in the same position on November 27, 2006.

While Lu was on administrative leave, she filed her third DFEH claim, alleging that by placing her on long term leave, and requiring her to produce another note from her doctor, Stanford was retaliating against her for filing the prior DFEH claims. The DFEH issued a right-to-sue letter on August 10, 2006.

In April 2007, the EEOC issued its findings on all three of Lu's DFEH claims, stating that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained established violations of the statutes. . . ."

On May 8, 2007, Lu filed her fourth DFEH claim, alleging she was retaliated against for filing her prior charges and discriminated against based on her disability. The DFEH issued a right-to-sue letter on May 17, 2007, and the EEOC issues a right-to-sue notice of dismissal on June 17, 2009.

In August 2007, Lu's position, as well as two others in her department was eliminated due to an unexpected loss of approximately half of the operating budget for the OCME. Stanford sent Lu a letter dated August 7, 2007, stating that her position was eliminated effective immediately, and offered to help her find a new job.

On September 24, 2007, Lu filed her fifth claim with the DFEH alleging she was terminated in retaliation for filing her prior claims. The DFEH issued a right-to-sue letter on September 24, 2007, and the EEOC issued a right-to-sue notice of dismissal on June 17, 2009.

3

After Lu's layoff, she began applying indiscriminately to hundreds of positions at Stanford for which she was unqualified. Lu did not disclose in her applications that she had filed claims of retaliation and discrimination with Stanford, or that she had a disability.

During Lu's continued job search at Stanford, she behaved erratically. For example, Lu arrived at a hiring manager's office without an appointment repeatedly demanding to know why she was not hired for a position. In addition, after interviewing for a position with a professor, Lu found the professor's CV online and changed it without permission.

Because of Lu's disruptive behavior in applying for jobs, Stanford informed Lu that it would no longer consider her for any employment. Despite Stanford's notification, Lu has continued to apply for jobs at Stanford, and uses various names and aliases.

On December 30, 2008, Lu brought her sixth claim with the DFEH, alleging that Stanford did not rehire her in retaliation for her prior DFEH charges. The DFEH issued a right-to-sue letter on January 8, 2009.

On January 7, 2010, Lu filed an amended complaint asserting the following five causes of action against Stanford: (1) discrimination based on her disability; (2) retaliation for reporting discrimination; (3) wrongful termination in violation of public policy; (4) intentional infliction of emotional distress; and (5) refusal to re-hire her in violation of public policy.

In July 2010, Stanford filed a motion for summary judgment. The hearing was originally set for October 2010; however, Lu requested numerous continuances "so that she could seek treatment." The summary judgment hearing was delayed until June 2011. On June 20, 2011, the court granted Stanford's motion for summary judgment. This appeal followed.

4

Lu asserts on appeal that the trial court erred in granting Stanford's motion for summary judgment.

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 843 (*Aguilar*).) As such, the summary judgment statute (Code Civ. Proc., § 437c), "provides a particularly suitable means to test the sufficiency of the plaintiff's prima facie case and/or of the defendant's [defense]." (*Caldwell v. Paramount Unified School Dist*. (1995) 41 Cal.App.4th 189, 203, fn. omitted.)

The moving party "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra*, 25 Cal.4th at p. 850, fn. omitted.) "Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code of Civ. Proc., § 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. [Citation.] The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. [Citation.] All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. [Citation.] [¶] While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. [Citation.]" (*Barber v. Marina Sailing, Inc*. (1995) 36 Cal.App.4th 558, 562.)

Our review of the grant or denial of summary judgment is de novo. (*Buss v.*

*Superior Court* (1997) 16 Cal.4th 35, 60; *Orrick Herrington & Sutcliffe v. Superior Court* (2003) 107 Cal.App.4th 1052, 1056.)  In conducting such de novo review, we "consider[] all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained.  [Citation.]" (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)  This review consists of "an independent assessment of the correctness of the trial court's ruling, [in which we] apply[] the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)  We need not defer to the trial court and are not bound by the reasons in its summary judgment ruling; we review the ruling of the trial court, not its rationale.  (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

As in the present case, a defendant moving for summary judgment has the burden of persuasion to show that there is no merit to a cause of action. A defendant can do so by showing that one or more of the elements of the cause of action cannot be established or that there is a complete defense to that cause of action.  (Code of Civ. Proc., § 437c, subd. (*o*)(2).)  Once the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or to a defense to the cause of action. In doing so, the plaintiff cannot rely on the mere allegations or denial of his pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ."  (Code of Civ. Proc., § 437c, subd. (p)(1).)

### Discrimination Based on Disability

Lu's allegations of discrimination because of her disability are based on actions and events that occurred in 2006, in particular, her job transfer out of the OCME. Because the first amended complaint was not filed until 2009, they are time barred.

6

In order to bring a state court action under the Fair Employment and Housing Act (FEHA), a plaintiff must file a complaint with the DFEH and receive a right-to-sue letter. (Gov. Code, § 12965, subd. (b).) The plaintiff then has one year within which to file a civil action based on the allegations made in the DFEH charge. (*Ibid.*)

If employment discrimination charges are timely filed with the DFEH, and the DFEH defers its investigation to the EEOC, the one-year period to file suit for violation of FEHA is equitably tolled during the pendency of the EEOC investigation until the EEOC issues its own right-to-sue letter. Once the EEOC issues its right-to-sue letter, the plaintiff has 90 days to file suit, or until the federal right-to-sue period ends, whichever is later. (Gov. Code, § 12965, subds. (d), (e); 42 U.S.C. § 2000e-5(f)(l).)

In the present case, with respect to the events that occurred in 2006, Lu filed three complaints with the DFEH, in February, April and August of 2006. The DFEH issued right to sue letters in these actions on February 13, 2006, April 18, 2006, and August 10, 2006 respectively. All of these complaints were then sent to the EEOC to investigate. On April 25, 2007, the EEOC issued findings with respect to all three of the 2006 complaints, stating that "based upon its investigation, the EEOC is unable to conclude that the information obtained established violations of the statutes. . . ." As a result, Lu's right to sue on the February 2006 and April 2006 complaints expired on July 25, 2007, which is 90 days from the issuance of the EEOC's decision. Lu's right to sue on the August 2006 complaint was August 10, 2007, because the DFEH one-year time to sue was later than the EEOC 90-day deadline. Because Lu's first amended complaint in this case was not filed until 2009, well over the expiration of the right to sue period, her action for discrimination based on the 2006 conduct is time barred.

Even if Lu's discrimination action were not time barred, she cannot demonstrate that Stanford discriminated against her because of her disability. In the context of discrimination and retaliation claims, an employer moving for summary judgment bears

7

the initial burden of producing evidence to show that it did not engage in prohibited conduct.  (*Martin v. Lockheed Missiles & Space Co*. (1994) 29 Cal.App.4th 1718, 1730 [discrimination]; *Miller v. Fairchild Industries, Inc*. (9th Cir. 1986) 797 F.2d 727, 731 [retaliation].)  Typically, the employer adduces evidence of legitimate reasons for the adverse employment decision.  (See *Martin v. Lockheed Missiles & Space Co., supra*, 29 Cal.App.4th at p. 1731.)

Once the employer makes the necessary evidentiary showing, the burden shifts to the employee, who must produce evidence that the employer's stated reasons were false or pretextual, or that the employer acted with a discriminatory animus.  (*Guz v. Bechtel National, Inc., supra*, 24 Cal.4th at p. 357 [discrimination]; *Miller v. Fairchild Industries, Inc., supra*, 797 F.2d at p. 731 [retaliation].)  "The exact showing required by an employee to avoid summary judgment in the face of evidence by an employer of a [legitimate] reason for an adverse action is a matter of disagreement."  (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1003.)  At the very least, however, the employee's evidence must be such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action.  (*Id.* pp. 1004-1005.)  It is not sufficient for an employee opposing summary judgment to make a bare prima facie showing of discrimination or to speculate as to discriminatory motive.  (*Ibid*.)  Rather it is incumbent upon the employee to produce " 'substantial responsive evidence' " demonstrating the existence of a material factual dispute as to pretext or discriminatory animus on the part of the employer.  (*Martin v. Lockheed Missiles & Space Co*., *supra*, 29 Cal.App.4th at p. 1735.)  "Thus, to withstand a motion for summary judgment, the opposing party must 'produce "specific facts showing that there remains a genuine factual issue for trial" and evidence "significantly probative as to any [material] fact claimed to be disputed." ' " (*Miller v. Fairchild Industries, Inc*., *supra*, 797 F.2d at p. 731.)

8

Here, Stanford meets its initial burden of demonstrating that Lu cannot establish an action for discrimination based on disability, because Lu cannot prove Stanford had knowledge of any disability before the transfer decision was made in March 2006. Indeed, Lu claims her disability (depression and anxiety) occurred as a result of the transfer; therefore, it cannot have been a cause of the transfer.

Lu presents no evidence to establish a triable issue of material fact that Stanford knew of her disability in making the transfer decision. Nor is there any evidence that the hiring managers for the 1000+ for which Lu applied had any knowledge of her disability. As such, Stanford is entitled to judgment as a matter of law as to Lu's cause of action for discrimination based on disability.

### *Retaliation*

Lu asserts that as a result of her engaging the protected activity of complaining to the DFEH, Stanford retaliated against her.

In order to establish a prima facie case for retaliation, Lu must demonstrate " ' "that she engaged in a protected activity, that she was thereafter subjected to an adverse employment action by her employer, and that there was a causal link between the two." ' " (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69.) Moreover, "in a retaliation case, the *McDonnell Douglas* test 'require[s] that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant show that the defendant articulate a legitimate nonretaliatory explanation for its acts, and (3) the plaintiff show that the defendant's proffered explanation is merely a pretext.' " (*Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 155.)

Here, Stanford meets its initial burden of demonstrating that there was no causal link between Lu's complaints to the DFEH and the employment actions. Stanford presents evidence of legitimate reasons for Lu's layoff due to financial constraints, and its failure to return Lu to work following her leave without a second medical opinion.

9

Finally, Stanford presents evidence of legitimate reasons, such as lack of qualification and Lu's disruptive behavior during the process, for its rejection of Lu's numerous employment applications. As a result, Stanford is entitled to judgment as a matter of law as to Lu's cause of action for retaliation.

### *Wrongful Termination in Violation of Public Policy*

Stanford asserts it is entitled to judgment as a matter of a law as to the cause of action for wrongful termination in violation of public policy, because it is barred by the statute of limitations.

The statute of limitations for a claim of wrongful termination in violation of public policy is governed by the two-year statute of limitations for personal injury claims. (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1208-1209; Code Civ. Proc. § 335.1.) A wrongful termination in violation of public policy claim accrues at the time of discharge. (*Romano v. Rockwell Internat. Inc.* (1996) 14 Cal.4th 479, 501.)

Lu was terminated by Stanford on August 7, 2007 pursuant to a letter that stated her position was eliminated "effective today," and that Lu would receive "30 days pay in lieu of notice." Therefore, the statute of limitations for her claim of wrongful termination in violation of public policy expired on August 7, 2009. Lu filed her complaint against Stanford on September 15, 2009, beyond the expiration of the statute of limitations.

Lu asserts her action for wrongful termination in violation of public policy is not barred by the statute of limitations, because she has what she refers to as an "official report" from Stanford that says she separated from employment on November 5, 2007. While the document does refer to a separation date of November 5, 2007, it also states that Lu's last day of work was August 7, 2009. Moreover, Lu's termination letter stated that she was terminated effective August 7, 2009.

Lu's action for wrongful termination accrued on August 7, 2009, because that is the date on which she was terminated. As a result, Lu's action is barred by the two-year statute of limitations.

### Intentional Infliction of Emotional Distress

In Lu's fourth cause of action, she alleges Stanford is liable for intentional infliction of emotional distress. Lu claims that as a result of her transfer from the OCME position, she became depressed and suffered severe anxiety attacks that forced her to take a medical leave of absence.

Emotional distress caused by misconduct in employment relations such as promotions, demotions, criticism of work practices, or grievance negotiations are considered to be a normal part of the employment environment. Thus, "[a] cause of action for such a claim is barred by the exclusive remedy provisions of the workers' compensation law. [Citations.] The Legislature, however, did not intend that an employer be allowed to raise the exclusivity rule for the purpose of deflecting a claim of discriminatory practices. [Citations.] [¶] Thus, a claim for emotional and psychological damage, arising out of employment, is not barred where the distress is engendered by an employer's illegal discriminatory practices." (*Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 352.)

Moreover, "where a plaintiff can allege that she suffered emotional distress because of a pattern of continuing violations that were discriminatory, her cause of action for infliction of emotional distress will not be barred by the exclusivity provisions of workers' compensation laws. This is so because the claim is 'founded upon actions that are outside the normal part of the employment environment . . . .' [Citation.]" (*Murray v. Oceanside Unified School Dist.* (2000) 79 Cal.App.4th 1338, 1363.)

Here, the emotional distress Lu alleges to have suffered, namely depression and anxiety, resulted from regular employment practices, specifically, Stanford's transfer of

11

Lu to OCME. There is no evidence that Stanford's conduct was part of an "illegal discriminatory practice[]," that could remove this action from the exclusivity provisions of the workers' compensation act. (*Accardi v. Superior Court, supra,* 17 Cal.App.4th at p. 352.) Lu's exclusive remedy for her allegations of emotional distress is workers' compensation. Therefore, Stanford is entitled to judgment as a matter of law as to this cause of action.

### *Refusal to Re-Hire in Violation of Public Policy*

In Lu's fifth cause of action, she asserts Stanford violated public policy in refusing to re-hire her. Stanford argues it is entitled to judgment as a matter of law, because no such cause of action exists under the law.

A wrongful termination in violation of public policy claim is based on the assertion that the employer's motives for terminating the employee are so contrary to fundamental norms an injury sounding in tort occurred. (See *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176.) An employee may recover in tort for wrongful termination if the discharge violated an established public policy. (*Turner v. Anheuser–Busch, Inc.* (1994) 7 Cal.4th 1238, 1256.) Our Supreme Court has explained: "To support a claim for wrongful termination in violation of public policy, a policy must be 'delineated in either constitutional or statutory provisions'; it must be ' "public" in the sense that it "inures to the benefit of the public" rather than serving merely the interests of the individual'; it must have been well established 'at the time of the discharge'; and it must be 'fundamental' and 'substantial.' [Citation.]" (*Ross v. RagingWire Telecommunications, Inc.* (2008) 42 Cal.4th 920, 942.)

While California courts recognize a cause of action for wrongful termination in violation of public policy, there is no such tort for failure to re-hire. (*Ayesh v. Fair Isaac Corp.* (N.D. Cal. 2005) 2005 U.S. Dist. LEXIS 43543, *10 ["a failure to hire does not create a cause of action under Article I, Section 8" of the California Constitution, which

12

is the basis for employment torts couched in public policy]; see also *Himaka v. Buddhist Churches of America* (N.D. Cal. 1995) 919 F.Supp. 332, 335 ["Whereas California courts have held that there is such a mechanism to redress wrongful discharge in violation of public policy,[citation] no California court has recognized a comparable mechanism to redress wrongful failure to provide equal promotional opportunities or equal working conditions—the violations which plaintiff alleges."].)

Because California does not recognize a cause of action for failure to re-hire in violation of public policy, Stanford is entitled to judgment as a matter of law as to the fifth cause of action.

## DISPOSITION

The judgment is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
ELIA, J.

13