Filed 6/20/13  O'Keefe & O'Keefe v. OZ Optics Limited CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| O'KEEFE & O'KEEFE LLP,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>OZ OPTICS LIMITED, et al.,<br><br>Defendants and Appellants. | A131330<br><br>(Alameda County<br> Super. Ct. No. RG08412468) |

**INTRODUCTION**

Defendants and cross-complainants OZ Optics Ltd., Oz Optics, Inc. (collectively OZ), and Omur Sezerman appeal from a judgment entered after a jury trial in favor of plaintiff and cross-defendant O'Keefe & O'Keefe, LLP (O&O), defendants' former attorneys.[1]  O&O sued defendants for failing to pay for legal services rendered by O&O in connection with two matters: *OZ Optics Limited, et al. v. Hakimoglu, et al.* (Alameda County Super. Ct. No. 01-0334488) (the *Hakimoglu* action) and *Reinhard v. Bitmath, Inc., et al.* (Santa Clara County Super. Ct. No. 1-02-CV-810955) (the *Reinhard* action). The jury awarded O&O damages against OZ in the sum of $190,142.54 with interest from the date of entry of judgment, plus costs.[2]

---

[1] OZ Optics Ltd. is a Canadian Corporation and Oz Optics, Inc., is its wholly owned U.S. subsidiary.  Omur Sezerman is the chief executive officer of OZ Optics Ltd.

[2] A dismissal without prejudice was entered as to Sezerman only, on November 22, 2010, the first day of jury selection.

1

On appeal, defendants contend: (1) the trial court improperly dismissed all causes of action of defendants' cross-complaint for failure to comply with the one-year statute of limitations for attorney malpractice (Code Civ. Proc., § 340.6)[3] and erroneously found O&O was not estopped to rely on the statute; (2) the trial court abused its discretion in allowing defendants' trial counsel to withdraw before the outset of trial in circumstances where such withdrawal prejudiced defendants; (3) the court prejudicially erred when it struck the opinions of OZ's expert witness Ronald Mallen, Esq. as to issues related to OZ's affirmative defenses that OZ was entitled to deductions from O&O's billing where O&O performed negligently and breached its contract with defendants; and (4) the court erroneously granted a partial directed verdict for O&O on OZ's affirmative defense asserting an offset for sums owing due to O&O's professional negligence.[4] We shall affirm the judgment.

## BACKGROUND

### A. Allegations of O&O's Complaint.

On September 30, 2008, O&O filed a complaint against defendants OZ and Sezerman for the sum of $153,000, seeking unpaid legal fees in excess of $132,289, plus accrued interest, in connection with legal services O&O had provided in the *Hakimoglu* action from January through July 2007, and for $1,775 for legal fees, plus accrued interest, for services O&O rendered in the *Reinhard* action.

**1. *The Hakimoglu action.*** In August 2005, defendants and O&O entered into a written agreement for O&O to represent defendants in the ongoing *Hakimoglu* action. Defendants agreed to pay O&O's fees and costs in advance, as O&O required such due to

---

[3] All statutory references are to the Code of Civil Procedure, unless otherwise indicated. All references to "rules" are to the California Rules of Court, unless otherwise indicated.

[4] Defendants raise several additional claims of error that we shall summarize hereafter. We shall deem them waived by defendants' failure to support them by citation to legal authority. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶¶ 8:17.1, 8:17.2, pp. 8-6 to 8-7 (Eisenberg, Civil Appeals and Writs), and cases there cited.)

2

a past history by defendants of refusing to pay prior counsel. In the *Hakimoglu* action, defendants contended that after it purchased semiconductor company, Bitmath, Inc., OZ's then vice president of business development, Zeynep Hakimoglu and three Bitmath officers, Ta-Ming Chi, Jerry Walker, and Addisu Tesfaye, breached their employment agreements and misappropriated OZ's trade secrets. Hakimoglu was represented by Greenberg Traurig LLP and Chi, Walker and Tesfaye were represented by the Law Offices of Douglas Unsworth. Upon undertaking defendants' representation, O&O amended the *Hakimoglu* action complaint to allege fraud, defendants' main claim at trial. Chi, Walker and Tesfaye filed a cross-complaint against OZ Optics Ltd., alleging under multiple theories that defendants fraudulently induced them to sell Bitmath and misappropriated Bitmath's trade secrets. Hakimoglu also pursued claims against defendants.

Defendants had made all fee payments due until trial began on the *Hakimoglu* action. At that point, defendants stopped paying O&O's invoices. O&O continued to represent defendants through the conclusion of trial on March 15, 2007, resulting in a jury verdict in favor of defendants. Thereafter, defendants attempted to force O&O to handle post-trial motions and the appeal without compensation. O&O refused. Beginning in late March 2007, O&O advised defendants that it would be forced to file a motion to withdraw if defendants did not bring its account current. Defendants promised to pay and to substitute O&O out of the case if O&O did the post-trial work. Defendants made a single $35,000 payment as an inducement. However, after O&O performed the post-trial work, defendants made no further payments. On August 8, 2007, defendants substituted in GCA Law Partnership LLP as their attorney and O&O ceased representing defendants.

**2. *The Reinhard action.*** In the *Reinhard* action, Bitmath's landlord Eli Reinhard sued defendants and Bitmath for abandoning the leased premises and failing to pay rent in violation of the lease. A jury trial of that matter resulted in a judgment against defendants for approximately $170,000. The jury also found against defendants on their cross-complaint. Defendants were represented by counsel other than O&O at trial and

initially on appeal. In July 2006, O&O substituted in as defendants' counsel on the *Reinhard* action, working with co-counsel Wilson Keon LLP. The Court of Appeal reversed the jury verdict on the basis of improper instructions and remanded the action for a new trial. On or about August 8, 2007, defendants substituted the GCA Law Partnership LLP to take over the *Reinhard* action, leaving an unpaid balance to O&O of $1,775.

**B. Defendants' Answer and Cross-Complaints.**

On February 18, 2009, defendants filed an answer to O&O's complaint for fees and a cross-complaint against O&O and O&O partner Garet O'Keefe.

**1.** *Answer and affirmative defenses.* In their answer, defendants raised affirmative defenses to O&O's fee claim. Among other things, defendants alleged O&O's claims were barred, in whole or part, by set-off or offset due to O&O's legal malpractice (second affirmative defense) and O&O's breaches of contract or breaches of fiduciary duty, including excessive billing hours (third affirmative defense).

**2.** *Cross-complaint and demurrer.* Defendants' cross-complaint against O&O and O'Keefe alleged legal malpractice, breach of contract, breach of fiduciary duty and fraud. It alleged that defendants did not discover and could not reasonably have been expected to discover O&O and O'Keefe's malpractice until on or after September 30, 2007, one year before the date O&O filed the complaint. The second and third causes of action for breach of contract and breach of fiduciary duty were based on alleged "billing for excessive hours for the nature and quality of the legal work performed, billing for work not authorized or approved by [defendants], and billing for work unnecessary to proper representation of [defendants] in the matter that was the subject of the contract." These claims were substantively the same as the setoff allegations of defendants' third affirmative defense. The fourth cause of action for fraud alleged O'Keefe urged defendants to settle with Chi and Walker in the *Hakimoglu* action and represented to defendants that the contents of "apology letters" and "statements of facts," received from Chi and Walker action could be used as evidence against Hakimoglu at trial, that Chi and Walker would give testimony favorable to defendants at trial, and that the benefits of

4

settling the case against Chi and Walker would outweigh any detriment from the dismissal of defendants' claims against the two. Relying on this advice, defendants settled with Chi and Walker, dismissing claims against them. The "apology letters" and other statements were not admitted at the *Hakimoglu* trial and Chi and Walker testified adversely to defendants, creating a more favorable impression of Hakimoglu with the jury and adversely impacting the amount of damages awarded to defendants.

O&O and O'Keefe demurred to defendants' cross-complaint and the trial court sustained the demurrer on the basis that the one-year limitations statute under section 340.6 applied. The court found that defendants "sustained actual damage, at the latest, when judgment was entered in the underlying action in May 2007, and the limitation period was tolled until [O&O's] representation of [defendants] ended on August 10, 2007." O&O had filed its complaint on September 30, 2008, more than one year after it ceased representing defendants and the cross-complaint related back to the date of filing of O&O's complaint. The court granted defendants leave to amend the first through third causes of action of the cross-complaint to attempt to allege facts supporting their claim that defendants did not discover and could not reasonably have discovered facts constituting the wrongful act or omission until after September 30, 2007. The court sustained the demurrer to the fourth cause of action for fraud with leave to amend on the basis that the facts alleged stated only a claim for malpractice, not actual fraud within the meaning of section 340.6, and hence the one-year limitations statute applied and also on the ground that the facts underlying the fraud claim were not pleaded with sufficient particularity.

**3. *First amended cross-complaint.*** Defendants' first amended cross-complaint contained the same causes of action as previously. The first through third causes of action alleged O&O and O'Keefe were professionally negligent during trial of the *Hakimoglu* action, including, but not limited to allegations that O'Keefe had failed to file pretrial motions, had failed to submit an unclean hands jury instruction, had provided erroneous advice regarding post-trial motions, had failed to retrieve defendants' trial exhibits, had engaged in excessive billing and unauthorized or unnecessary work, and

5

that O'Keefe had shown his animus toward Sezerman by throwing a pen at Sezerman during trial. However, defendants now alleged in support of their estoppel claim that: "As early as March 28, 2007, [defendants] accused O'Keefe of committing malpractice and threatened to sue it. These threats were repeated, in very clear and dramatic language, on multiple occasions thereafter. These threats were made in writing (emails) and orally." Such allegation was directly contrary to the allegation of the previous cross-complaint that defendants did not and could not have discovered O&O's malpractice before September 30, 2007. Instead, defendants asserted that O'Keefe's continued representation of defendants after they had accused him of malpractice, placed him in a conflict of interest with defendants and that he knew defendants were erroneously assuming that any applicable statute of limitations for malpractice against O&O and O'Keefe would be tolled or suspended while any appeal was pending. Again, O&O and O'Keefe demurred.

The trial court sustained the demurrer to these causes of action *without leave to amend*, rejecting defendants' argument that O&O was estopped to rely on the attorney malpractice statute of limitations because it "misled" defendants about whether the appeal, pending at the time O&O withdrew on August 10, 2007, acted to toll the limitation period for defendants' malpractice claim against O&O. Nor did the court agree that O&O had a fiduciary duty to advise defendants that the limitation period for a malpractice claim against it was one year or to advise that the period was not tolled while the appeal was pending. The court also rejected defendants' claim that O'Keefe had acted improperly by continuing to represent defendants after they had accused him of malpractice. The alleged conflict was created by defendants, who accused O'Keefe of malpractice, but failed to terminate O&O's services. The court concluded as a matter of law that an attorney has no fiduciary duty to advise a client of the rules concerning tolling of the limitation period for malpractice where the client is threatening to sue that attorney for malpractice.

O&O and O'Keefe's demurrer to the fourth cause of action for "fraudulent billing" was sustained *with leave to amend* in order to require defendants to allege the fraudulent

6

billing with more particularity. Thereafter, defendants dismissed this claim and omitted it from their second amended cross-complaint.

The fifth cause of action for fraud was based on the same allegedly negligent advice O'Keefe gave regarding the "apology letters" and statements by Chi and Walker alleged in the previous cross-complaint. The court sustained the demurrer to the fifth cause of action for fraud *with leave to amend* to allow a final opportunity to allege "if possible and within the required particularity" how the claim based on the "apology letters" and statements of Chi and Walker could constitute actual fraud.

The sixth cause of action for fraud alleged O&O and O'Keefe were estopped to rely on the statute of limitations because O'Keefe had an affirmative duty to inform defendants that the statute of limitations on a malpractice action against O&O was one year and would not be tolled pending appeal. The trial court sustained the demurrer *without leave to amend* on the ground that it did not state a cause of action independent from legal malpractice and was time-barred for the same reasons as the first through third causes of action.

**4. *Second amended cross-complaint.*** Defendants filed a second amended cross-complaint alleging one cause of action for fraud, deceit and intentional misrepresentation based on the Chi and Walker "apology letters" and their statements. The complaint alleged the same facts as before, but also alleged that O'Keefe made the false representations because he was desperate to get out of the case. On October 2, 2009, the trial court sustained the demurrer to the second amended cross-complaint *without leave to amend.* The court reasoned that the cause of action was not factually distinguishable from the fifth cause of action of the first amended complaint and was therefore time-barred by the one-year limitation period for actions against an attorney for a wrongful act or omission. (§ 340.6.) The allegation that the testimony of Walker and Chi would be beneficial to defendants' case was based on a prediction of future events, which neither O&O nor defendants could completely control, and on an additional prediction about the effect of such testimony on the jury. Such was clear from the allegation of the cross-complaint that defendants predicted Walker and Chi would be more likely to support

7

Hakimoglu if they were no longer defendants. Nor did the allegation that O'Keefe misrepresented that the "apology letters" could be used as evidence at trial support a fraud claim, because it was based on the provision of incorrect legal advice that allegedly resulted in the loss of defendants' claims against Walker and Chi and damage to its claim against Hakimoglu. The additional allegation that O'Keefe was motivated to settle with Walker and Chi because O'Keefe wanted to settle the entire case and did not want to take the case to trial, did not take the claim outside the realm of malpractice. The nature of the conduct alleged was still a "judgment call" made by an attorney while providing legal services, and the only alleged harm resulting from that conduct was damage to the claims and defenses in the underlying action.

## C.  Braden's Withdrawl as Defendants' Counsel and Ouda's Entry

On May 5, 2010, defendants' attorney James M. Braden moved to be relieved as counsel, two months before the scheduled trial date. Sezerman initially opposed Braden's motion to withdraw, asserting that it would prejudice defendants and that Braden had charged them a fixed fee and had been paid in full. After an extended hearing on June 3, 2010, Sezerman agreed not to oppose the motion to withdraw, the court deemed the motion unopposed, and granted it. The court set a date for the next case management conference for July 21, 2010, with a substitution of attorney for the OZ entities to be filed before that date. Sezerman advised the court he would be representing himself as an individual. The court continued the trial date to October 4, 2010. The June 19, 2010 discovery cutoff date remained in place.

OZ did not substitute new counsel by the July 21, 2010 hearing. Sezerman appeared telephonically and advised the court that the OZ entities intended to bring in Peter Ouda, a New Jersey attorney, and that an application to appear *pro hac vice* would be filed no later than the following Monday, July 26, 2010. Ouda was allowed to specially appear at the hearing by phone. The *pro hac vice* application was filed August 16, 2010, and granted by the court on August 19, 2010. At the August 19, 2010 hearing, OZ sought a further 90-day continuance of the trial. The court observed there had been delay and that it was surprised it took OZ so long to substitute counsel.

8

Although initially finding no good cause to continue the trial further, because Ouda claimed to have 75 boxes of discovery to go through, the trial court granted a continuance of trial to November 15, 2010, to allow Ouda to "get up to speed," but it refused to re-open discovery. On October 21, 2010, Ouda sought an additional trial continuance and the court continued the trial one week to November 22, 2010.

**D. Judicial challenges.**

On November 17, 2010, OZ filed a peremptory challenge to the judge. (§ 170.6.) That same day the court denied the challenge as untimely. On November 19, 2010, the trial court issued an additional order, "in an abundance of caution," striking the judicial challenges. The order stated that although the challenges did not cite section 170.3 as authority and did not appear on their face to be challenges for cause, the challenges were substantively defective and procedurally untimely under that section and must be stricken.

On the first day of jury trial, November 22, 2010, OZ again filed a challenge for cause against the judge. O&O objected and the court stated on the record that as defendants provided no explanation in their papers for the delay in bringing the motion, a question was raised "whether they deliberately timed the filing of the Challenge to attempt to delay the commencement of trial." The judge filed a verified answer to the challenge for cause on December 2, 2010, denying any bias and responding to the specific allegations with transcript and other references. On December 17, 2010, the Honorable Susan M. Dauphine, of the Monterey County Superior Court, was assigned to rule on the disqualification motion. On February 22, 2011, Judge Dauphine denied OZ's motion to disqualify the trial judge, finding the motion was untimely and substantively without merit.

**E. Trial**

On the first day of trial, O&O dismissed its action against Sezerman without prejudice. Jury selection began on November 22, 2010, and was followed by ten days of trial. During the trial OZ made several motions for mistrial on various bases that were denied by the court.

9

OZ called Ronald Mallen as an expert witness in the context of defendants' affirmative defenses raising offsets to O&O's fee claim. Mallen opined that O'Keefe was negligent in his representation of defendants in the *Hakimoglu* action in five areas: (1) O'Keefe's attempt to admit the written "apology letters" and statements of fact of settling defendants Chi and Walker indicated O'Keefe did not understand the hearsay rule; (2) O'Keefe's failure to request an instruction on unclean hands, which defense, if successful, would have eliminated Hakimoglu's counterclaim against OZ in the underlying trial, and the resulting conclusion by trial and appellate courts that any error in failing to so instruct was deemed waived; (3) O'Keefe's erroneous advice to the client about the likely success of a motion for partial judgment notwithstanding verdict (JNOV); (4) O'Keefe's leaving the courtroom in the underlying trial on two occasions to use the bathroom, which left the client unrepresented at trial; and (5) O'Keefe's errors in closing argument related to the presentation of deposition testimony. Mallen limited his opinions to the alleged violations of the standard of care and expressly declined to offer any opinions on the value or lack thereof of O&O's services with respect to any of these asserted instances of negligence. He did not opine whether anything O&O did had any impact on the outcome of the *Hakimoglu* trial, as he had not been asked to do so and, therefore, he did not render an opinion on causation. Nor did he attempt to quantify the amount of any attorney's fees that should not be recovered.

On December 8, 2010, O&O moved for a partial directed verdict on defendants' affirmative defenses and setoff. O&O argued that "with regard to the affirmative defense for a set off stemming from alleged legal malpractice, OZ has failed to present any evidence to support the elements of causation or damages for a legal malpractice claim." O&O also argued for a directed verdict on the affirmative defenses of breach of contract and breaches of fiduciary duty, including O&O's alleged failure to follow Sezerman's instructions and alleged excessive billing claims.

The trial court found OZ failed to meet its burden of proof with regard to the defense of legal malpractice as a setoff to O&O's breach of contract fee claim and granted a partial directed verdict for O&O as to OZ's second affirmative defense for an

offset due to O&O's legal malpractice. The court denied the motion for a directed verdict on the breach of contract and breach of fiduciary duty affirmative defenses, allowing the jury to consider them. It advised counsel that "[a]ny legal opinion [Mallen] gave . . . on the issue of legal malpractice is out." At the same time, the court rejected Ouda's blanket characterization of its order as preventing counsel from even mentioning Mallen as a witness at all, stating: "I think I have made it clear, based on my ruling on plaintiff's motion that there's no legal malpractice setoff claim before the jury." The court acknowledged it would allow reference to certain Mallen testimony, such as confirming defendants' claim that O&O's bringing of the JNOV motion below was inappropriate and had no chance of success. The jury was instructed that the claim by OZ that it was entitled to a setoff against any award to O&O in the amount of damages based on legal malpractice by O&O was no longer an issue in the case and should not be considered during deliberations. O&O was allowed to say to the jury that because the legal malpractice issue was no longer in the case, Mallen's opinions regarding the standard of care were no longer relevant. Consequently, the case went to the jury on O&O's claim that defendants breached the contract for the provision of legal services by failing to pay O&O and failing to reimburse it for costs it advanced and on defendants' denial of that claim and their affirmative defenses that they were entitled to a setoff of any award to O&O in the amount of damages attributable to O&O's own breach of contract and breach of fiduciary duty to defendants.

On December 9, 2010, the jury returned a verdict for O&O, awarding it $190,142.54, the full amount of O&O's claimed damages. The jury specifically found O&O did not breach its fiduciary duty to OZ. Therefore, OZ was entitled to no setoff. Judgment was entered on December 28, 2010. Notice of entry of judgment followed on January 3, 2011. This timely appeal followed. We denied O&O's motion to dismiss the appeal on July 22, 2011. We denied the application of attorney Peter Ouda to appear as counsel *pro hac vice* on behalf of OZ on August 5, 2011. Defendants' appellants' opening brief was filed by attorney Michael Keck, who apparently had provided some

11

limited assistance to Ouda at trial.  On April 11, 2012, O&O filed a motion for sanctions against defendants and Keck.

## DISCUSSION

### I.  Sezerman's Standing to Appeal

As a threshold matter, we address O&O's assertion that Sezerman lacks "standing" to appeal as the Notice of Appeal was signed and filed by Ouda who represented only the OZ entities at trial.  Sezerman clearly had "standing" to appeal as a party aggrieved by the court's sustaining of the demurrers that resulted in dismissing defendants' cross-complaint.

It is true that after Braden's withdrawal, Ouda represented the OZ entities *only* and Sezerman represented himself in propria persona, until he was dismissed as a defendant on November 22, 2010.  However, we will "assume counsel had the necessary authority" to file an appeal for the client unless there is "a clear and satisfactory showing" that counsel lacked such authority.  (*In re Malcolm D.* (1996) 42 Cal.App.4th 904, 910; see Eisenberg, Civil Appeals and Writs, *supra,* ¶ 3:125.2, p. 3-55.)  Moreover, the attorney who signs the notice of appeal "need not be appellant's attorney of record [citation] so that an attorney newly retained to handle the appeal after trial may sign even before an association of counsel is filed.  Indeed, any person authorized by the appellant—whether or not an attorney—may sign the notice on appellant's behalf.  [Citations.]"  (Eisenberg, Civil Appeals and Writs, at ¶ 3:125, p. 3-54.)

### II.  Sustaining of the Demurrers to the Cross-Complaint

Defendants maintain the trial court erroneously sustained demurrers to their cross-complaints based on the one-year statute of limitations for attorney malpractice.  (§ 340.6.)[5]

---

[5] "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . .  Except for a claim for which the plaintiff is required to establish his or her factual innocence, in no

12

"On appeal from a judgment of dismissal following the sustaining of a demurrer without leave to amend, we assume the truth of all properly pleaded facts. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6; [citation].) We also accept as true all facts that may be implied or inferred from those expressly alleged. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403; [citation].)" (*Curcini v. County of Alameda* (2008) 164 Cal.App.4th 629, 633, fn. 3.) If the trial court sustains a demurrer without leave to amend, appellate courts determine whether or not the plaintiff could amend the complaint to state a cause of action. (*Id*. at p. 637.) Plaintiff bears the burden of proving the trial court abused its discretion in denying leave to amend. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Leonard v. John Crane, Inc.* (2012) 206 Cal.App.4th 1274, 1282.)

## A. Malpractice claims and section 340.6.

Defendants contend they reasonably could not have discovered O&O's malpractice until on or after September 30, 2007, and that O&O was estopped from alleging an accrual date before then because it had misled or concealed the applicable statute of limitations from them. The trial court properly rejected this claim.

O&O ceased representing defendant on or before August 10, 2007. More than one year later, on September 20, 2008, O&O filed its action for fees for services rendered. Defendants' cross-complaint related back the September 30, 2008, filing of O&O's fee

event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

"(1) The plaintiff has not sustained actual injury.

"(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred.

"(3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation.

"(4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.

"(b) In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of that act or event." (§ 340.6.)

13

action. As the trial court found when it sustained the demurrer to the first three causes of action of the first amended cross-complaint without leave to amend, the cross-complaint showed on its face that these claims were time-barred. Defendants conceded they were aware of facts supporting their malpractice claim before August 10, 2007, when O&O's representation of defendants ended. Indeed, that cross-complaint contains allegations that "[a]s early as March 28, 2007, [defendants] accused O'Keefe of committing malpractice and threatened to sue it."

In *Laird v. Blacker* (1992) 2 Cal.4th 606, the California Supreme Court held that the limitations period of section 340.6 commences when a client suffers an adverse judgment or order of dismissal in the underlying action on which the malpractice action is based. It held that the plaintiff sustained actual injury when the trial court dismissed her underlying action and she was compelled to incur legal costs and expenditures in pursuing an appeal. It further held that the limitations period was *not* tolled pending an appeal of the adverse judgment or dismissal. (*Id.* at pp. 609, 615.)

Defendants contend here, as they did below, that O&O was estopped to rely on the statute of limitations where defendants alleged that O&O misled them about the statute of limitations for malpractice, failing to advise them that the statute of limitations for attorney malpractice was one year and that the one-year limitation period would not be tolled while the appeal was pending. As the trial court cogently explained in rejecting this argument: "An attorney does not have a fiduciary duty to a client to advise the client regarding how best to sue the attorney for malpractice once the representation ends, even if the client has expressed an inclination to do so. The scope of the representation by O'Keefe encompassed the claims in the underlying action. O'Keefe was not hired to provide legal advice about potential malpractice claims against itself. In addition, the fact that a client does not have specific information about legal theories and rules relating to a claim of malpractice is irrelevant to the running of the limitation period. Thus, failure to disclose this type of information cannot serve as a basis for tolling the limitation period. [(]*Graham v. Hansen* (1982) 128 Cal.App.3d 965, 972[.)]" *Graham v. Hansen,* cited by the trial court, reiterates the "well-settled principle that ignorance of a

14

legal theory of recovery against defendants is irrelevant. 'The statute of limitations is not tolled by belated discovery of *legal theories*, as distinguished from belated discovery of *facts*. In legal and medical malpractice cases, the courts are often confronted with such claims that the statute of limitations has been tolled. However, the Supreme Court repeatedly has explained that it is the knowledge of facts rather than discovery of legal theory, that is the test. The test is whether the plaintiff has information of circumstances sufficient to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his or her investigation.' [Citations.]" (*Ibid.*)

No case cited by defendants or found by us holds that an attorney has a fiduciary duty to advise a client regarding how best to sue the attorney for malpractice, or of the applicable statutes of limitation. We conclude there is no such duty. (See *Expansion Pointe Properties Limited Partnership v. Procopio, Cory, Hargreaves & Savitch, LLP* (2007) 152 Cal.App.4th 42, 55 ["no authority suggesting an attorney has a duty to discuss—either at the inception of the attorney-client relationship or later in the representation—the various types of recovery a client may obtain in a potential malpractice action against him or her"]; Mallen and Smith, 3 Legal Malpractice (2012) § 24:5, pp. 622–623 ["there is no civil cause of action for a lawyer's failure to confess legal malpractice, which consists simply of nondisclosure of prior negligent conduct, unless there was an independent tort or risk of additional injury"].)

Absent such duty, the failure of O&O to advise defendants of the one-year statute of limitations for malpractice or that it was not tolled by the appeal does not estop O&O from relying on the statute of limitations with respect to the cross-complaint. Nor did such allegations state a cause of action for breach of fiduciary duty or for actual fraud.

The cases cited by defendants do not persuade us otherwise:

Defendants rely upon *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1988) 18 Cal.4th 739, 763 (*Jordache*), for the proposition that a malpractice claim does not necessarily accrue on entry of adverse judgment, dismissal or settlement of the underlying action and that the application of the delayed discovery rule makes the determination of accrual of a malpractice action an issue of fact. We agree with this

15

statement, as a general proposition. However, in recognizing that "[t]he resolution of litigation related to alleged malpractice may or may not mark the point at which a plaintiff first sustains actual injury under section 340.6" (*ibid.*), the Supreme Court found the statute had run *before* the client settled with the insurer for less than the full benefits claimed where, as here, the client acknowledged it discovered its attorneys' alleged malpractice more than one year before it commenced the action. (*Id.* at p. 743.) Further, although *Jordache* states that "only the facts and circumstances of each case, analyzed in light of the alleged negligence and its consequences as revealed by the evidence, can establish when the plaintiff sustained actual injury under section 340.6," (*id.* at p. 764), it also acknowledges in the context of a summary judgment motion that "[w]hen the material facts are undisputed, the trial court can resolve the question *as a matter of law. . . .*" (*Ibid.*, italics added.)

Similarly, defendants' citation of *Radovich v. Locke-Paddon* (1995) 35 Cal.App.4th 946, 967, for the undisputed proposition that an attorney's error may not cause damages and a client may not discover the error for years after the fact misses the point. As the Supreme Court recognized in *Samuels v. Mix* (1999) 22 Cal.4th 1,7: "On its face, section 340.6(a) states 'two distinct and alternative limitation periods: *one* year after actual or constructive *discovery*, or *four* years after *occurrence* (the date of the wrongful act or omission), whichever occurs first.' (*Radovich v. Locke-Paddon*[*, supra,*] 35 Cal.App.4th 946, 966, italics in original; [citation].)"

Here defendants *alleged* they had discovered malpractice and accused O&O of the same as early as March 2007. Therefore, even under the most generous reading of the statute of limitations, as a matter of law, defendants accrued damages at the time the judgment was rendered. The statute was tolled pursuant to section 340.6, subdivision (a)(2) until O&O ceased representing defendants on the matter—still more than a year before they filed the complaint to which defendants' cross-complaint related back.

### B. Fraud claims.

Defendants maintain that the court erroneously sustained the demurrer as to their fraud claims. The one-year limitations period contained in section 340.6 does not apply to claims of "actual fraud." In sustaining the demurrer to the fraud claims, the trial court concluded that the allegations of the first and second amended cross-complaints demonstrated that the intentional fraud and misrepresentation claims were no more than a re-labeled version of defendants' legal malpractice claims and should be subject to the same statute of limitations. Defendants contend, to the contrary, that even if the facts alleged support a claim for malpractice, those same facts may support a claim for fraud where defendants alleged the specific misrepresentations made by O&O regarding the Chi and Walker "apology letters" and statements and where defendants settled with Chi and Walker and changed its position in the lawsuit to its detriment in reliance thereupon.

Mallen and Smith observe with regard to the element of reliance, that "[t]he rule that an opinion is not actionable does not necessarily apply to an attorney's representations to a client. A representation of the state of law or of legal principles by an attorney can be a representation of fact. Therefore, an attorney's advice or opinion, if knowingly false, can be fraud." (Mallen and Smith, 1 Legal Malpractice, *supra*, § 8:10, pp. 989–990, fns. omitted, citing non-California cases.) At the same time, the treatise acknowledges, "[a] statement of intended conduct, however, can be the basis of fraud only if the statement was false when made." (*Id.* at p. 990, fn. omitted.) Furthermore, "[a] statement or prediction of the anticipated result in litigation, however, is not a representation of material fact." (*Ibid.*, fn. omitted.)

Defendants alleged in their second amended complaint that O&O made knowingly false statements that the Chi and Walker "apology letters" and statements would be admissible at trial, intending to induce defendants to settle with the pair and that defendants did so in reliance upon those statements. As the trial court observed, such statements were "based on a prediction of future events, which neither [plaintiff] nor [defendants] could completely control, and on an additional prediction about the effect of such testimony on the jury." That O&O was motivated to end the action did not change

17

the tenor of the claim from malpractice to fraud.  As the trial court concluded, "The nature of the conduct alleged was still a 'judgment call' made by an attorney while providing legal services, and the only alleged harm resulting from that conduct is damage to the client's claims and defenses in the underlying action."

Defendants contend the trial court misapplied *Jackson v. Rogers & Wells* (1989) 210 Cal.App.3d 336 (*Jackson*), which held that a fraud cause of action that was essentially a cause of action for legal malpractice could not be assigned.  In *Jackson,* Jackson sued Mix for legal malpractice and securities fraud.  On the advice of the attorneys representing him and his malpractice insurers, Mix rejected various settlement offers by Jackson and proceeded to trial, which resulted in a $1 million-plus judgment in favor of Jackson.  Based on the refusal of Mix and his insurers' and counsel's refusal to settle, Jackson filed suit against them, eventually settling with the insurance company, who assigned to Jackson their claims against the attorneys formerly representing Mix and insurers.  Jackson alleged, among other things, that the attorneys misrepresented and omitted to disclose the content of documentary and testimonial evidence to the carriers, purposefully underestimated to them Mix's potential for liability, performed unnecessary and improper legal services only to prolong litigation and prevent settlement and that but for this fraud, Mix would have settled earlier with Jackson, for a smaller sum than the eventual judgment.  (*Id.* at p. 340.)  The trial court sustained the attorney defendants' demurrer on the theory that legal malpractice claims were not assignable, whether sounding in negligence or in intentional conduct.

The Court of Appeal affirmed (*Jackson*, *supra,* 210 Cal.App.3d at p. 338), holding that the plaintiff's allegations of fraud in reality stated only a legal malpractice claim. The court's holding rested on its conclusion that "[t]he conduct alleged, representations regarding evidence and the state of the law, evaluations of the probability the client would prevail in the action, and allocation of resources to the client's case, all constitute 'judgment calls' within the scope of the attorney's legal representation of the client."  (*Id.* at p. 346.)  The same is true in the instant case.

18

Defendants' reliance on *Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 185 (*Charnay*) does not convince us otherwise. There the appellate court reversed the trial court's sustaining of a demurrer to causes of action for malpractice, intentional fraud and negligent misrepresentation. However, the case is distinguishable. As the trial court recognized, in *Charnay,* the gravamen of the plaintiff's claim for fraud was fraudulent billing practices and false representations designed to generate excessive attorney's fees at plaintiff's expense. Here, the claim is founded on the provision of *incorrect legal advice* that allegedly resulted only in the loss of defendants' claims against Walker and Chi and damage to its claim against Hakimoglu.

Defendant's reliance on *Pollack v. Lytle* (1981) 120 Cal.App.3d 931, is also unpersuasive as that case was an action between *co-counsel*, not by a client against his or her attorney. (*Id.* at pp. 937-938.) The court concluded that co-counsel had adequately stated a cause of action for breach of fiduciary duty and fraud, but determined that the claim of legal malpractice was subsumed by either the breach of contract action or was subsumed in the breach of fiduciary duty cause of action. (*Id.* at p. 944.) *Pollack v. Lytle* was expressly disapproved by the California Supreme Court in *Beck v. Wecht* (2002) 28 Cal.4th 289, 292–298, which held that one co-counsel may not sue another for breach of fiduciary duty on the theory that the latter's malpractice in handling their mutual client's case either reduced or eliminated the fees the former expected to realize. (*Id.* at pp. 290–291.)

The trial court did not err in sustaining the demurrers to the fraud causes of action of defendants' cross-complaints. To hold otherwise in this case would conflate the torts of malpractice and actual fraud, turning every attorney malpractice claim into a fraud cause of action, and undermining the statute of limitations for attorney malpractice.

19

## II. No Error in Permitting Trial Counsel's Withdrawal

Defendants contend the court improperly permitted defendants' trial counsel, Braden, to withdraw two months before the scheduled trial date. Defendants assert that it was "highly prejudicial for the court to allow the Braden firm to withdraw and to do so without extending discovery *indefinitely*." (Italics added.)

To support their prejudice claim, defendants assert that the matter had been pending for several years, that no depositions had been taken and paper discovery was outstanding, that motions to compel discovery and for sanctions were pending, O&O's motion for a writ of attachment was pending, and that no expert had been retained for defendants except Mallen, who had prepared a declaration in opposition to the writ of attachment. Defendants further assert that Braden had done nothing to establish any of the defenses defendants had to the fee claim, that papers accompanying Braden's motion to withdraw were highly prejudicial to Sezerman, that Braden poisoned the court against defendants by disclosing confidential communications between Braden and defendants, and the court failed to give defendants adequate time to prepare for trial. These prejudice assertions are disputed by O&O and, for the most part, are unsupported by the record. More importantly, they are irrelevant here, where defendants *consented* to Braden's withdrawal.

The only authority cited by defendants in support of this claim is rule 3-700 of the State Bar Rules of Professional Conduct regarding "Termination of Employment." (Rules Prof. Conduct, rule 3-700(A)(2), (C).)[6] These relate to the attorney's

---

[6] "**(A) In General**. [¶] . . . [¶] (2) A member shall not withdraw from employment until the member has taken reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, including giving due notice to the client, allowing time for employment of other counsel, complying with rule 3-700(D), and complying with applicable laws and rules." (Rules Prof. Conduct, rule 3-700(A)(2).)

"**(C) Permissive Withdrawal.** [¶] If rule 3-700(B) ["**Mandatory Withdrawal**"] is not applicable, a member may not request permission to withdraw in matters pending before a tribunal, and may not withdraw in other matters, unless such request or such withdrawal is because: (1) The client [¶] . . . [¶] (d) by other conduct renders it unreasonably difficult for the member to carry out the employment effectively, or

20

responsibilities to the client, but do not determine whether counsel has shown "good cause" for withdrawal. Defendants do not cite the relevant statute, section 284, which provides: "The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows: [¶] 1. Upon the *consent* of both client and attorney, filed with the clerk, or entered upon the minutes; 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other." (Italics added.)

Defendant *consented* to the substitution and our review of the record persuades us that his consent was both knowing and voluntary and that no undue pressure was exercised by the court to secure his consent to counsel's withdrawal. Indeed, Sezerman engaged in what appeared at times to be a protracted "negotiation" with the court, trying to have it both ways—Braden staying in *and* a long continuance of motions, discovery and trial. That the court gave him a clear choice in the circumstances does not amount to an abuse of discretion.[7] We find no abuse of discretion in the court's granting of

---

[¶] (e) [¶] . . . [¶] (5) The client knowingly and freely assents to termination of the employment; or (6) The member believes in good faith, in a proceeding pending before a tribunal, that the tribunal will find the existence of other good cause for withdrawal." (Rules Prof. Conduct, rule 3-700(C).)

[7] At the hearing on Braden's motion to withdraw, four other motions as to which the court had issued tentative rulings were to be heard as well. (These apparently included O&O's discovery-related motion to compel and for sanctions.) Sezerman wished the court to hear Braden's withdrawal motion first, rather than having him argue the four motions, and then to have the court grant a continuance on the other motions.

The court stated its belief that there would be prejudicial to plaintiff to continue the other motions and suggested that as Sezerman was opposing Braden's withdrawal, Braden should first argue the merits of the four motions that he was prepared to argue, and then be heard on his withdrawal motion. Sezerman acknowledged "communication problems with my attorney and [there] has been for some time. Despite that, I want to continue working with him." Sezerman was asked whether he was willing to release Braden in exchange for a continuance of all the other motions until he could retain a new attorney. The court stated its intent to "go forward with the other motions being heard first and argued by Mr. Braden as long as you are not willing to substitute in new counsel, as long as you intend to oppose the motion to be relieved." Sezerman asked what the next step would be should he agree to counsel's withdrawal and the court stated it would be inclined to grant a brief continuance to allow Sezerman to bring in new

21

Braden's motion to withdraw. (*Manfredi & Levine v. Superior Court* (1998) 66 Cal.App.4th 1128, 1133.)

### III. Mallen's Expert Testimony and Directed Verdict

Defendants contend the court prejudicially erred when it struck the opinions of OZ's expert witness Ronald Mallen as to issues related to OZ's affirmative defenses that OZ was entitled to deductions from O&O's fees where O&O performed negligently and where O&O breached its contract with defendants. O&O counters that the court never struck Mallen's testimony, but rather, it granted O&O's motion for a partial directed verdict as to OZ's setoff defense of legal malpractice on the ground that OZ had presented no evidence of causation or damages. Citing *Orrick Herrington & Sutcliffe v. Superior Court* (2003) 107 Cal.App.4th 1052 (*Orrick*) and our opinion in *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135 (*Fair*), defendants maintain that OZ need not

---

counsel. The court stated its inclination to continue the trial date, set a case management conference in approximately 30 days where new counsel could talk about whether discovery could be reopened. Sezerman wanted more than 30 days, and the court agreed to make the date approximately 45 days. The court indicated it would allow new counsel to argue the four motions, if Sezerman agreed to the substitution. Braden indicated that the discovery being sought from defendants was nearly completed, but that it would be well to have new counsel review and finalize those responses. O&O opposed the continuance of the pending discovery-related motions.

Asked directly by the court whether he was agreeing to substitute in new counsel, Sezerman stated, "I will agree to substitute new counsel if that's going to give—which I believe that's going to give me the best way of defending myself." The court responded, "That's your decision to decide what's in your best interest. The Court isn't pressuring you to do anything." Sezerman continued to argue about the discovery issues. The court stated its view of the withdrawal motion that "there were strong personal differences that were interfering with the relationship. That's it. The details of that don't really matter here." The court further indicated its belief that it was remaining neutral and not affected by any of the details of the breakdown of the attorney-client relationship. Finally, the court stated its tentative ruling was to grant Braden's motion to be relieved "now, not after certain discovery is completed, for the reason that I stated in my tentative. So, let's do this one last time. What do you want to do?" Sezerman responded: "*In that case, I'll accept that I substitute my attorney. There's no third choice. Third choice is my preferred choice, but if that is not on the table, then I'll take this one.*" The court ordered: "*[T]he motion to be relieved as counsel is deemed unopposed and is granted.*" (Italics added.)

22

identify proximate causation or damages to seek a reduction in billing via this affirmative defense. We find no error.

First, as O&O points out, the court did not strike Mallen's opinions. The court admonished counsel that Mallen's opinions could be referenced in closing argument *only* if relevant to OZ's affirmative defenses *other than malpractice*—"there's no legal malpractice setoff claim before the jury." The court acknowledged that references could be made to Mallen's testimony regarding the likelihood of success of the motion for judgment notwithstanding verdict in the *Hakimoglu* action and whether defendants would have authorized O&O to go forward with that motion had they known it would have been futile, so long as defendants did not attempt to argue legal malpractice. "Otherwise everything else he said was for malpractice."

Second, "[i]n California a viable legal malpractice claim requires proof of '(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence.' (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199.) The third and fourth elements cannot be overlooked. (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1242.)" (*Landmark Screens, LLC v. Morgan, Lewis & Bockius, LLP* (2010) 183 Cal.App.4th 238, 247–248.)

We reject defendants' assertion that neither causation nor damages are required elements of a legal malpractice claim raised as an affirmative defense to an attorney's action against the former client for unpaid fees. Defendants maintain the court's partial directed verdict on defendants' legal malpractice defense runs counter to the teaching of *Orrick, supra,* 107 Cal.App.4th 1052 and *Fair, supra,* 195 Cal.App.4th 1135.[8]

---

[8] We note that O&O makes no effort to address these two cases or the claim that an affirmative defense of legal malpractice requires expert testimony only as to the standard of care and not as to causation or damages, because the billings for work negligently done are themselves the damages. Despite its oversize brief (more than 113 pages), instead of addressing the meat of defendants' claim, O&O argues only that the

23

In *Orrick, supra,* 107 Cal.App.4th 1052, a former client (Malcolm), sued his former attorneys for professional negligence, breach of contract, and breach of fiduciary duty in preparing a marital settlement agreement for him. The law firm cross-complained for attorney's fees owed and moved for summary adjudication on the individual causes of action, asserting Malcolm could not prove actual damages, an essential element of each of his causes of action. (*Id.* at p. 1055.) The trial court denied summary judgment for the law firm and Division Four of this court issued a peremptory writ vacating the trial court's order and directing it to grant summary adjudication in favor of the law firm on Malcolm's professional negligence and breach of fiduciary duty causes of action. (*Id.* at pp. 1057–1060.) The court allowed the case to proceed on the client's *contract claim* on the ground that if the client were overcharged for defendant's services, such constituted contract damages. (*Id.* at p. 1061.) In the course of its determination, the appellate court rejected the client's claim that the fees he paid the law firm constituted actual damages in his malpractice case. According to the court, that "proposition is true only so far as Malcolm is claiming he paid more than the value of the legal services he received. ([*Jordache, supra,* at pp. 750–751].) If he can prove he did not receive value for his payment, he may recover damages 'to the extent' the fees exceeded the value of the services received. [Citation.] Thus, Malcolm's recovery is limited to the amount of fees paid. [¶] . . . [W]e believe it is evident that an overpayment for services is contract damages. As we have already explained, where the law to be otherwise, tort damages would exist in every instance an attorney collected a fee." (*Id.* at p. 1060, fn. omitted.)

Nowhere in the foregoing did the appellate court in *Orrick, supra,* 107 Cal.App.4th 1052, indicate that the elements of causation and damages would not apply to any affirmative defense based on legal malpractice. It addressed only the causes of action raised in Malcolm's complaint. The case does not stand for the proposition that causation and damages are not essential elements of a legal malpractice claim raised as an affirmative defense to a fee claim. (See also, *Callahan v. Gibson, Dunn & Crutcher LLP*

court did not actually strike Mallen's opinions and that defendants have misrepresented the court's rulings.

24

(2011) 194 Cal.App.4th 557, 577–578 [payment of legal fees for services negligently performed does not constitute "actual injury" for purposes of a malpractice injury].)  As observed by the court in *Callahan v. Gibson, Dunn & Crutcher LLP,* "Legal fees for defective services will inevitably be 'excessive':  The client received less than it had agreed to pay for (that is, services performed with ordinary skill and knowledge).  To equate these potential damages with actual injury would return California to a strict, occurrence-based limitations period for malpractice claims, contrary to the Legislature's express purpose in adopting section 340.6 [citation]."  (*Ibid.*)

Further, in the case before us, the court *denied O&Os motion for directed verdict on the affirmative defenses alleging breach of contract and breach of fiduciary duty* and OZ was allowed to present those defenses to the jury.[9]

Nor does our opinion in *Fair, supra,* 195 Cal.App.4th 1135, assist defendants.  It arises in the context of a former client's claim that an attorney seeking quantum meruit recovery of fees and other sums owed for services rendered had *breached his fiduciary duties* to the client, where the trial court had declared a business agreement between the attorney, client and client's businesses to be void and unenforceable due to the fiduciary breaches.  The business agreements conferred significant financial advantages on the attorney before they were voided at the clients' election, and the material terms and

---

[9] With respect to their breach of contract claim, defendants point to no evidence that the services they received were ultimately of less value than the fees they were charged.  Mallen refused to opine on the "value" question.

The jury in this case was instructed that defendants had claimed they were entitled to a setoff based on O&O's own breach of contract and breach of fiduciary duty.  However, no separate special verdict on defendants' breach of contract affirmative defense was submitted to the jury.  It is not clear what happened to this affirmative defense, as the parties did not discuss it in closing argument.  It well may be that they considered the matter covered by special verdict on O&O's breach of contract cause of action.  On O&O's contract claim for fees, the jury expressly found *O&O did "all, or substantially all, of the significant things that the contract required it to do"*; that "*all the conditions occur[red] that were required for the OZ Defendants' performance*"; that "the OZ Defendants fail[ed] to do something that the contract required them to do"; and that O&O was "harmed by the failure of the OZ Defendants to do something that the contract required them to do."  (Italics added.)

conditions of the business transactions were not fully explained to and understood by the client at the time. We held that the attorney seeking quantum meruit recovery failed to rebut the presumption that his business transactions with his clients were a breach of his fiduciary duty and the product of undue influence, thus supporting the trial court's denial of quantum meruit recovery for the value of the attorney's services, even if each of the business transactions was fair and reasonable, and the business was very successful. (*Id.* at pp. 1150–1156.) We concluded that proof of damages was not required where the client sought forfeiture of attorney's fees rather than tort compensation for the fiduciary duty violations. In so concluding, we observed that the attorney had "conflate[d] the tort cause of action for breach of fiduciary duty, which requires damages as an element [citation] with the breach of a fiduciary duty to a client under [Probate Code] section 16004, sufficient to warrant voiding of an agreement. Breach and damages are two distinct elements of the tort cause of action. An attorney may violate the statute and breach his or her fiduciary duties to the client without causing the client damages. It makes sense to require proof of damages where the client seeks compensatory damages as a tort remedy for breach of fiduciary duty, but not if the client seeks only forfeiture of fees. The purpose of compensatory damages is to make plaintiffs whole for harm caused by defendants. (See Rest.2d Torts, § 903, com. a, pp. 453–454.) Forfeiture of legal fees serves several different purposes. It deters attorney misconduct and recognizes that damage caused by attorney misconduct is often difficult to assess. (Rest.3d The Law Governing Lawyers, § 37, com. b, p. 272.) It prevents fiduciaries from profiting from their fiduciary breach and disloyalty. [Citations.] Like compensatory damages, it compensates clients for harm they have suffered, but it reflects not the harms the clients suffer from the tainted representation, but the decreased value of the representation itself. [Citation.]" (*Id.* at pp. 1153–1154.) Furthermore, we concluded that the client had proved damages by showing the attorney had received "disproportionate back-end interests and profits from those investments to which [the attorney] claimed entitlement." (*Id.* at p. 1154.)

26

Our holding and discussion in *Fair, supra,* 195 Cal.App.4th 1135, arose in the specific context of the claimed violations of fiduciary duty under the Code of Professional Responsibility and the Probate Code and our discussion was limited to that context. We are aware of no authority extending either our holding or its rationale to the context of legal malpractice raised as an affirmative defense. Furthermore, unlike the *Fair* case, the fee agreement between O&O and defendants was not declared void. The jury found the fee agreement was fully performed by O&O. Finally, the jury specifically rejected defendants' affirmative defense that O&O had breached its fiduciary duty to defendants.

Consequently, we conclude the trial court did not err in granting the partial directed verdict in favor of O&O on defendants' legal malpractice affirmative defense, as defendants failed to present substantial evidence of the requisite legal elements of causation or damages. The court did not err in admonishing the jury that legal malpractice by O&O was no longer an issue in the case. Nor did the court err in admonishing counsel that they were not to refer to Mallen's testimony insofar as it related to OZ's legal malpractice affirmative defense.

### IV. Other Claims of Error Forfeited

Defendants raise the following claims of reversible error, including: (1) the court erroneously denied them access to O&O's billing records for other clients, preventing them from establishing their fraudulent billing claim; (2) the court abused its discretion in refusing to extend discovery to allow defendants and new counsel to prepare for trial; (3) the trial judge should have disqualified herself where there was evidence she was biased against defendants; (4) the court erroneously denied OZ's requests for mistrial where witnesses made inflammatory comments against Sezerman; and (5) the court erroneously denied OZ's mistrial request where the court committed judicial misconduct during the trial by reprimanding Sezerman for being nonresponsive, removing him from the courtroom on two occasions, calling police officers into the courtroom because of a mistaken belief Sezerman was being disruptive, interfering with the communications between Sezerman and his attorney, and interfering with the order of witnesses.

27

Defendants have waived the foregoing claims by failing to support them by citation to legal authority. (Eisenberg, Civil Appeals and Writs, *supra,* ¶¶ 8:17.1, 8:17.2, pp. 8-6 to 8-7, and cases there cited.) " 'An appellate brief "should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration." [Citation.]' [Citation.] Again, 'This court is not inclined to act as counsel for . . . any appellant and furnish a legal argument as to how the trial court's rulings in this regard constituted an abuse of discretion' [citation], or a mistake of law." (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.)

In addition, record citations for many of defendants' claims on appeal are inadequate or missing altogether. Defendants frequently mischaracterize what occurred in the proceedings below or the tenor of the court's rulings. Particularly with respect to defendants' claims that the trial judge was biased and committed judicial misconduct, our review of the record convinces us this trial judge (Hon. Ronni MacLaren) exercised great patience and restraint in dealing with counsel and with the parties, particularly with Sezerman, who was disrespectful to the court and frequently disruptive to the proceedings. Although we find the judicial misconduct claim was waived, we also find it to be completely without merit.[10]

### V. Sanctions Motion

O&O seeks sanctions of $43,795 against defendants OZ and Sezerman and against appellate counsel Michael Keck. O&O argues the appeal was objectively and subjectively frivolous and intended to harass O&O and to delay proceedings. O&O further contends that defendants' and Keck's numerous violations of the appellate rules warrant sanctions in connection with this appeal.

---

[10] We also note that the denials of defendants' section 170.6 challenges to the judge are not cognizable on appeal, but only on a writ of mandate. (§ 170.3, subd. (d) ["The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding. . . ."].)

In connection with oral argument, we notified the parties we were considering imposing sanctions and allowed defendants and Keck to file written opposition and O&O to file a reply.  (Rule 8.276(c).)  Our review persuades us that sanctions are warranted in this case.

"Our Supreme Court in *In re Marriage of Flaherty* [(1982)] 31 Cal.3d 637, set forth the applicable standard:  'an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.  [Citation.]'  ([*Id.*] at p. 650.)"  (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1432.)  In addition, under the California Rules of Court, rule 8.276, we may impose sanctions not only for the taking of a frivolous appeal or appealing solely to cause delay, (rule 8.276(a)(1)), but also for the following:  "(2) Including in the record any matter not reasonably material to the appeal's determination; (3) Filing a frivolous motion; or (4) Committing any other unreasonable violation of these rules."  (Rule 8.276(a)(2)–(4).)

## A.  Objectively frivolous appeal.

We have found the appeal to be without merit.  Nevertheless, we do not view it as completely frivolous, as defendants' contention that the court erred in ruling that causation and damages were required for defendants' affirmative defense of legal malpractice raises a question of some substance requiring analysis of the cases defendants cite.  A reasonable attorney could conclude that such claim was not totally and completely without merit and therefore, was not objectively frivolous.  (See *In re Marriage of Flaherty, supra,* 31 Cal.3d 637, 649–650.)

However, this appeal was *mostly* frivolous.  With the exception of the contention we have described above concerning the causation and damages elements of the legal malpractice affirmative defense, defendants' appeal lacks all merit.  (*Pollock v. University of Southern California, supra,* 112 Cal.App.4th at p. 1432; *Maple Properties v. Harris* (1984) 158 Cal.App.3d 997, 1010 [imposing sanctions for partially frivolous

29

appeal if frivolous claims are "*significant*" and "*material*" part of appeal].)  These numerous frivolous claims were both "*significant*" and "*material*" parts of the appeal.

**B.  Subjectively frivolous appeal.**

In support of its claim that the appeal was also subjectively frivolous and brought for purposes of delay and "harassment," O&O also points to various actions by Sezerman at the trial below and in the *Hakimoglu* trial; and to defendants' filing of a second malpractice action against O&O and O'Keefe in Los Angeles on the first day of trial, which action was transferred to Alameda County and ultimately dismissed by defendants after O&O and O'Keefe moved for sanctions.  O&O also cites defendants' conduct of the appeal, including OZ's numerous extension requests on appeal (five for the opening brief and three for the reply brief) that O&O contends were intended solely for delay, and to other procedural violations by defendants, such as untimely service of OZ's copy of the record on appeal.  O&O further complains that defendants included in the record matter not material to the issues they raised on appeal.

Although the parties' conduct during the litigation may assist in determining whether conduct in an appeal was taken in bad faith or solely for purposes of delay, we decline to consider Sezerman's conduct below on the question whether this appeal was subjectively frivolous.  Nor are we convinced that this appeal was taken *solely* for purposes of delay.

**C.  Unreasonable violation of the rules.**

O&O asserts that defendants have mischaracterized proceedings and rulings below in their appellate briefs.  We agree.  In their appellate briefs defendants misrepresent the court's ruling with respect to its "striking" Mallen's testimony, described above; they misrepresent that the demurrer to the fourth cause for overbilling was *overruled*, when in fact it was sustained with leave to amend; they misstate (without citation to the record) that the *court dismissed* the fraudulent billing claim on the merits after defendants rested,

30

when in fact OZ had dismissed that claim itself long before trial.[11]  Defendants state that they "vigorously opposed" Braden's motion to withdraw, implying the court granted Braden's motion over their objection.  They neglect to mention they *consented* to that withdrawal.  Defendants also mischaracterize the court's admonitions to Ouda and Sezerman to stop verbally conferring with each other during Ouda's examination of witnesses in a manner that disrupted and delayed the proceedings.  Defendants further contend they were allowed only two months trial preparation, when in fact, the court granted extensions of the trial date to November 22, 2010, more than five months after Braden withdrew and three months after Ouda formally substituted into the case.  Defendants maintain the court read and was prejudiced by redacted e-mails Braden sent to the court describing their dispute.  They cite only speculation in Sezerman's declaration for this proposition and ignore the record of the hearing on Braden's motion to withdraw.  That record shows Braden stating that the court did not accept or open the sealed declaration he filed and also indicates the court handing the sealed declaration back to Braden and stating that her job was to remain neutral and that Sezerman need not be concerned that the court was influenced by his disagreement with counsel in terms of the court's ability to be fair.  Indeed, the court refused Sezerman's attempts to draw her into the details of his disagreement with Braden.  Without doubt, defendants have repeatedly failed to comply with the requirement that in their appellate briefing, they must fairly summarize all of the facts in the light most favorable to the judgment.  (See *Boeken v. Philip Morris Inc.* (2005) 127 Cal.App.4th 1640, 1658.)

O&O points to other, numerous failings in defendants' appellate briefs, some of which failings have provided the bases for our conclusion that defendants have waived many of the issues they attempt to raise on appeal.  O&O also correctly points out that

---

[11] On the other hand, O&O acknowledges that OZ asserted fraudulent billing as a setoff defense at trial and attempted to present evidence through Sezerman to support that claim. The trial court found there was insufficient evidence of fraudulent billing to warrant a jury instruction and OZ does not challenge that ruling on appeal.  Hence, although it is unclear, defendants' reference *may* relate to that ruling by the trial court, which defendants do not appear to challenge.

defendants have attempted to appeal from non-appealable orders (§ 170.6 disqualification denials). Defendants have failed in numerous instances to include adequate record citations for their arguments, in violation of rule 8.204(a)(1).[12] For instance, defendants failed to provide a record citation to the order denying discovery of O&O's billing records for other clients, which defendants also failed to include as part of the record. Indeed, defendants failed to cite to the record at all in claiming the court improperly denied them access to O&O's billing records. Defendants failed to provide a record citation to the order granting Braden's motion to be relieved as counsel. Nor did they provide a record cite to the order denying OZ's motion to extend discovery (which they also failed to designate as part of the record). Other instances of inadequate record citation or record designation include, but are not limited to, defendants' assertion that "the papers accompanying the Braden motion were highly prejudicial to Omur Sezerman." However, their citation to the clerk's transcript contains only the notice of motion without accompanying papers. Although defendants cite the orders denying and striking OZ's first challenge against Judge MacLaren, they do not provide a record citation to the order of Judge Dauphine denying their second challenge to the judge. Nor do appellants specifically identify which of the several orders denying mistrial they are appealing. (We note O&O *erroneously* accuses defendants of citing the order sustaining the demurrer to their first amended cross-complaint, but failing to provide a record cite to the order sustaining the demurrer to the second amended cross-complaint, containing OZ's actual fraud cause of action. In fact, defendants' citation to the record *is* to the court's sustaining of the demurrer to the second amended cross-complaint.)

As we have observed above, defendants have failed to cite legal authority for many, if not most, of their claims of error.

---

[12] Rule 8.204(a)(1) provides in relevant part that each appellate brief "must: [¶] . . . [¶] (C) Support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears. . . ."

O&O also charges defendants with committing *other* unreasonable violations of the appellate procedural rules and engaged in "gamesmanship" on this appeal. For the most part, these relate to minor technical rule violations that routinely occur in many appeals and do not appear to us to be the type of "unreasonable" rule violations that warrant sanctions. O&O asserts that defendants delayed in filing their notice designating the record until after the superior court issued a default notice. However, O&O does not relate that the designation was timely filed *within* the 15-day period allowed by the superior court's notice of default. Nevertheless, O&O moved to dismiss the appeal due to that alleged failure and, finding its motion had been filed one day after the designation had been made, O&O withdrew its motion the next day. O&O also asserts that defendants failed to timely submit defendant's trial exhibits to the court under rule 8.122(a)(3), which requires that exhibits be provided to the superior court within 10 days of service of the designation notice. O&O contends defendants failed to timely comply with rule 8.153 by lending defendants' copy of the record to O&O upon O&O's timely request, therefore requiring O&O to move to compel compliance. Again, O&O withdrew its motion less than a week after filing it. O&O contends Keck agreed to stipulate to an extension to file respondent's brief, but then ignored that request until after respondent had submitted its application for an extension.

In light of the foregoing and having carefully considered the request and opposition, we believe sanctions on appeal are warranted. In sum, although *not completely* frivolous, with a single exception, the claims raised by defendants on appeal are utterly frivolous and these frivolous claims comprise both significant and material parts of this appeal. Further, defendants' appellate briefs contain numerous misrepresentations of the facts and mischaracterizations of the conduct of proceedings below, as well as repeated violations of the appellate rules. We therefore exercise our discretion to impose $5,000 against defendants and $5000 against Keck, payable $5,000 to O&O and $5,000 to this court.

33

## DISPOSITION

The judgment is affirmed.  O&O shall recover its costs on appeal.  Sanctions are imposed as described above.

_____
Kline, P.J.

We concur:

_____
Lambden,, J.

_____
Richman, J.